CLARENCE T. GARDNER *vs.* PROVIDENCE TELEPHONE COMPANY.

PROVIDENCE—JULY 25, 1901.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Common Carriers.   Telephones.   "Extension Sets."*

The service which a telephone company undertakes to render the public is analogous to that of a common carrier, and its obligations are to be determined upon the same principles as affect persons engaged in business requiring special public concessions.

Where a telephone company has received, in pursuance of legislative authority, exclusive rights in the highways of a city, it is a condition of such grant that it shall furnish the public complete service of the kind in which it deals, with such appliances for use and convenience as the state of the art affords from time to time.

The company may impose such reasonable rules for the use of its appliances as are required to insure efficiency and safety; and no unreasonable rule or requirement can be enforced as a condition of furnishing equal service to the whole public.

The nature of telephonic service and the agencies employed in it render it reasonable that the company should insist upon the right to furnish "extension sets" when desired, or in the alternative refuse to give or continue a subscriber's service.

This right is contingent and subject to the obligation that the company should be willing and able to furnish extension sets as effective and convenient as the state of the art affords, not accompanied with extortionate demands for compensation, so as to render the offer nugatory.

While the court generally exercises no supervision over the prices fixed by a telephone company, it must consider the amount charged for the performance of a duty to a customer in deciding upon the reasonableness in any case of requiring the customer to seek such service exclusively of the company.

Where a telephone company neglects its duty to the public and is not pro-

vided with the means to secure the accommodation of its customers or, having at command such appliances, refuses to furnish them except at exorbitant rates, the customer has a right to supplement such imperfect service with approved appliances procured elsewhere, provided they·can be used in connection with the company's circuits without detriment to their operation.

Where a customer, without applying to the company to furnish additional accommodation in the nature of an "extension set," or asking their terms for such extension, annexed to the company's circuit an apparatus of his own selection, equity will refuse to enjoin the company from depriving the customer of telephonic service on his refusal to discontinue its use.

BILL IN EQUITY seeking an injunction on grounds set out in full in the opinion. Heard on bill, answer, and proofs. Relief denied.

DOUGLAS, J.   There is little, if any, dispute as to the facts of this case which is set forth by the complainant as follows :

This is a bill in equity brought by Clarence T. Gardner, of the City of Providence, against the Providence Telephone Company, a corporation engaged in the business of renting telephone instruments and affording means of communication by electric telephones in Providence and elsewhere in the State of Rhode Island ; to restrain said corporation from depriving him of telephone service at his residence and office.

The bill sets forth the business of the respondent corporation and that for the purposes of said business it is authorized by its charter to use and does use the public streets and highways ; that it rents telephones to its customers which are connected with a central exchange and that by means thereof such customers or subscribers are enabled to communicate with the defendant's other subscribers, and also with persons in other cities, and that the respondent is the only person or corporation which can legally carry on such business in said city of Providence.

That the plaintiff is now and has been for many years a customer of the defendant, renting a telephone instrument both at his office and residence ; that he has paid all rentals demanded by the defendant, and has used his telephone properly and in accordance with all reasonable rules and

regulations of the defendant, and is willing to pay such rentals and comply with such rules; that he is a physician in active practice both in Providence and throughout the State; that a large proportion of the calls for his services as a physician are received over the telephone, and that deprivation of telephone service would be detrimental to his practice.

That the defendant on the twenty-third day of February, 1897, notified the plaintiff that it would, at the expiration of one month from the date of said notice, cut off his telephone service, refuse to answer his calls and refuse to connect him with other subscribers.

The bill, as heretofore stated, prays that the defendant may be enjoined from taking such action.

The answer of the defendant admits that it is a corporation carrying on the business described in the bill; that it uses for the purposes of such business the public streets and highways, and that it is the only person or corporation which can legally carry on such business in the city of Providence. It admits that the plaintiff is one of its customers and has paid all charges made against him for telephone service.

The answer denies that the plaintiff has used his telephone properly and has complied with all reasonable rules and regulations of the defendant, and alleges that he has violated a regulation of the defendant which provides that no telephone or telephonic instrument shall be used by any customer except such as may be furnished by the company; that the defendant itself furnishes extension sets, so-called, as a valuable part of its business; that such extension sets consist of a second telephone and transmitter, connected by wire with the original telephone and transmitter placed in the subscriber's premises, the second set being in another part of such premises; and that the plaintiff in violation of such rule (claimed by the defendant to be reasonable) has installed both in his office and his residence an extension set not furnished by the defendant.

The answer admits that by reason of this alleged violation of a regulation of the defendant the defendant did threaten to deprive the plaintiff of telephone service, and would have

done so had not this bill been filed, and claims that it has the legal and equitable right so to do.

The answer also contains an extended argument as to the reasonableness of this regulation forbidding the use of private extension sets, based upon the following claims, to wit:

(1) That it has expended large sums of money in license fees paid to a parent company for certain portions of its apparatus, in constructing poles and underground lines, in putting up wires and cables, and for other purposes, and that the furnishing of extension sets is a valuable and legitimate part of its business, by means of which in part it receives a return for these expenditures. That it is willing to furnish such extension sets to all its customers, and that the use of private extension sets is a destruction of its legitimate income and vested rights.

(2) That by attaching the wires connecting his private extension set (called by the defendant a clandestine instrument) to the wires placed by the company on the customer's premises, the subscriber or customer trespasses upon the company's property.

(3) That the wires of the extension sets are hidden from view of the company's inspectors to avoid detection, and the company's property is endangered by the possible presence of strong currents coming over such wires, and the company is made liable for the destruction thereby of other property and injury to persons.

(4) The answer does not allege, but much testimony has been introduced in the attempt to show, that the use by a subscriber of a private extension set is liable to interfere with the working of the company's system.

The testimony shows that the plaintiff is a physician, with a large practice in Providence and vicinity. That in 1879 or 1880 he had put in, both at his office and at his residence, a telephone instrument furnished by the defendant company and connected with its exchange. These were grounded-circuit instruments; that is, they were connected with the defendant's exchange by a single wire, the current returning through the ground. These telephones are on a private line;

that is, there are no other subscribers having instruments connected with the wire which connects the plaintiff's office and residence with the defendant's exchange. The instruments furnished by the defendant are of the Blake transmitter type, so-called, consisting of a board about twenty inches in length, to which is attached the transmitter, a box with a pressed carbon attached to a spring, and a bell, and also beneath, a large box containing a battery, all these being attached to the wall of the subscriber's premises (pp. 75 and 76). At the plaintiff's office this instrument is attached to the wall about twenty feet from the plaintiff's desk; at his residence it was placed on the wall of his bed-room. For the use of these instruments the plaintiff has paid and now pays to the defendant the sum of eighty-two dollars per annum. About the year 1896 the plaintiff purchased two extension instruments and paid for them fifty dollars each. These he connected with the defendant's wires inside the complainant's premises at office and residence. The one at the office is placed upon the plaintiff's desk; that at the house in his lower hall. These instruments are of what is called the long-distance type, consisting of a shaft placed upon a standard with a switch on which hangs a watch-case receiver, a granular carbon transmitter, and a platinum diaphragm—not differing materially except in superior lightness and elegance of construction from the long-distance extension instruments chiefly used by the defendant (pp. 143, 144, 191, and 197). The plaintiff testifies that by the use of these instruments the convenience and effectiveness of his telephone service has been greatly increased, and that he had had less occasion than ever before to call upon the defendant to remedy defects in the service. The defendant shows that there have been during the past five years some half dozen complaints of bad service at the plaintiff's office and residence, and that on some of these occasions the trouble has been traced to these extension instruments. These instruments, after five years' use, are in as good condition as when they were purchased. The same instruments for which the plaintiff paid $50 in 1896, or the very best type of long-distance extension instrument—as

good and effective in every way as the instruments furnished by the company—can now be purchased outright for $12.50 at retail (p. 233). There has been no attempt on the part of the plaintiff to conceal the use of these extension sets (pp. 8 and 9). The instruments and the wires connecting them are at all times in plain sight, and the attention of the defendant's agents has been called to them whenever they visited the plaintiff's premises.

Up to 1896 or 1897 there were no extension sets except those manufactured by the Bell Telephone Company, and it was, of course, unnecessary to make any rules with reference to their use. Indeed, no rule with reference to their use has ever been promulgated (pp. 91, 93, and 105). A prohibition against the use of such instrument was printed in the revised form of application and contract adopted by the defendant in 1896 or 1897, and subscribers who have attached such instruments were notified that the telephone company forbade their use and were required to remove them (pp. 49, 50, 63, 64, 65, 68, 72, 74, 91, 93, 97).

(1)    The question which thus arises for the decision of the court is whether a corporation having a monopoly of the telephone business in a community can deprive a subscriber of telephone service for the reason that he refuses to discontinue the use, in connection with the wires of the company on the subscriber's premises, of an extension set not furnished by the company.

The general principles of law upon which the complainant relies are well settled. The telephone company has rights granted by the city in pursuance of legislative authority, to make certain uses of the highways of the city, and no other company has similar rights. By municipal action, therefore, invoked by the defendant, the complainant is forced to deal with the defendant if he desires telephonic service. Undoubtedly it is a condition of such a grant that the grantee shall furnish to such of the public as desire it complete service of the kind in which it deals, with such appliances for use and convenience as the state of the art affords from time to time. And it cannot be disputed that the company may

impose such reasonable rules for the use of its appliances as are required to insure efficiency and safety, and that no unreasonable rule or requirement can be enforced as a condition of furnishing equal service to the whole public. The service which a telephone company undertakes to render, and which it receives special privileges from the public that it may render, is analogous to that of a common carrier, and its obligations to the public are to be determined upon the same principles which have long been settled with reference to persons or corporations engaged in business which requires special public concessions. The general principle is laid down in *Munn* v. *Illinois*, 94 U. S. 113. The application to telephone companies is made in many cases. In *State* v. *Bell Telephone Co.*, 36 Ohio St. 296, McIlvane, C. J., says: "It appears to us as a proposition too plain to admit of argument that where the beneficial use of patented property or of any species of property requires public patronage and government aid, as, for instance, the use of public ways and the exercise of the right of eminent domain, the State may impose such conditions and regulations as in the judgment of the law-making power are necessary to promote the public good."

In *State* v. *Del. & A. T. T. Co.*, 47 Fed. Rep. 633, 640, Wales, J., after commenting upon many decisions, says: "From the foregoing review of the law it follows that the respondent is a common carrier which has offered to the public the use of a telephonic system for the rapid conveyance of oral messages from one point to another; that one of the most important duties of a common carrier is that it shall serve all persons alike, impartially and without unreasonable discrimination;" &c., and the decision proceeds to declare a contract contrary to this duty to be void as against public policy.

To the same effect as to the general relations of a telephone company to the public are—*Atlantic & Pacific Telegraph Co.* v. *W. U. Telegraph Co.*, 4 Daly, N. Y. 527; *State* v. *Bell Telephone Co.*, 23 Fed. Rep. 539; *D. A. T. & T. Co.* v. *State*, 50 Fed. Rep. 677; and other cases which as-

sume the principles above stated as settled law and discuss various applications of them.

The defendant does not argue against these general propositions of law, but insists that it is reasonable for it to claim the right to furnish and control the whole telephonic plant on the premises of a subscriber which shall be connected with its lines.

We cannot assent to all the reasoning of the defendant's counsel in support of this proposition. We are inclined to believe that his apprehension of danger from other electric conductors on the subscriber's premises is exaggerated. The fact that the company has submitted to a *modus vivendi* with the complainant since it first knew of his use of an extension set which has continued the attachment till the present time without any serious accident indicates that in this instance safety is not a controlling consideration. And we cannot agree that any slight modification by the subscriber of the use of the instrument placed in his house, as, *e. g.*, by the attachment of a funnel for magnifying the sound, would constitute a trespass on the property of the company in the technical meaning of the word.

Neither does it appear that the addition of an extension set to a customer's circuit increases the labor of the operator at the switchboard. So long as the subscriber is entitled to the use of the line as often as his business requires, and but one person can use the line at a time, either through the main telephone or the extension set, there can be no more calls sent in than the rates already established have contemplated. Indeed, the saving of time to the central office by reason of the superior accessibility of the customer who has an extension set nearer than the telephone is an advantage to the company.

But we do believe that the claim finds justification and support in the nature of the service and the agencies employed in it.

The telephone circuit includes delicate instruments actuated by currents of electricity of feeble power. The introduction into a circuit of extension sets requires technical skill

to secure perfect adaptation to the original circuit and its appliances. It seems plain to us that this should be the work of the same party which builds and operates the original circuit, and subject to the same routine of inspection. The original circuit and the additions to it should be a unit in construction, operation, and management. The circulation of the electric current by which the telephone is operated differs essentially from the distribution of illuminating gas, though both are supplied from a central source and used upon the premises of a customer. The gas which is supplied through a meter is forever after beyond any control of the producer; no use that the customer makes of it can react so as to affect the company or its distributing system. Whether a cubic foot of gas is used for light by means of one burner or another, or for heating by one system of stove or furnace or another, can make no possible difference to the manufacturer, and hence it would be unreasonable for a gas company to insist upon supplying stoves or burners, or to dictate in what position on the premises the gas should be finally consumed. An electric current, on the contrary, does not terminate in but passes through the customer's premises. The circuit must be complete either wholly along a metallic conductor or partly through the earth. The current while passing from as well as to the premises of the customer exerts its natural influence upon conductors and resistances which it encounters. Any resistance or interruption affects or is liable to affect the whole system. Any appliance introduced anywhere to modify the action of the current may produce results, at any other point in the circuit. When the telephone is in use the subscriber's circuit is connected with that which includes his correspondent, and in practice may be connected with one circuit after another throughout the whole system. A company, therefore, furnishing the use of an electric current generated by its own apparatus may reasonably require that it shall not be diverted over other channels and used to actuate other appliances with which the company is not familiar and which have not received its approval.

Now the best adaptation of an extension set·to the system to which it is added, and the best supervision of such a set and system, and the best service to a customer, may reasonably be expected when the whole system and its extensions are installed and controlled by the company.   It is therefore reasonable· that the company should insist upon the right to furnish extension sets when they are desired, or, in the alternative, refuse to give or continue its service.   In the words of the Supreme Court of Illinois in *People* v. *W. U. Tel. Co.*, 46 N. E. Rep. 731, it "has a right to choose its own agencies for the performance of its duties."

But this right is contingent and not absolute.   It is subject to the obligation we have alluded to above, viz., that the company shall be able and willing to furnish extension sets as efficient and convenient as the state of the art affords.   It is the duty of the company to keep abreast of the march of improvement, so as to serve its customers as conveniently as they can provide for themselves from the market.   Such improvements and extensions as are offered must not be accompanied with extortionate demands for compensation so as to render the offer nugatory.   The price charged for the extra accommodation must bear some proportion to the actual cost of it and the additional burden of care and maintenance. While the court exercises no supervision over the prices fixed by a telephone company generally, it must consider the amount charged ʼfor the performance of a duty to a customer in deciding upon the reasonableness in any particular case of requiring the customer to seek such service exclusively of the company.   So long as the company observes these equitable principles in acting under its rule, the court will consider its action reasonable and will sustain it.   If, however, the company neglects its duty to the public and is not provided with the means to secure the accommodation of its customers, or, having at its command such appliances, refuses to furnish them except at exorbitant rates, we cannot question the right of the customer to supplement the imperfect service of the company with approved appliances procured elsewhere, provided that such appliances can be used in connection with the

company's circuits without detriment to their harmonious operation. We think, however, that before a customer is justified in such an invasion of the *prima facie* rights of the company he must apply to the company to furnish the additional accommodation desired, and if the company refuses or couples its consent with unreasonable conditions he must be prepared to show affirmatively that the appliance which he annexes to the company's system is not injurious to the system or its operation before he can have the assistance of a court of equity to compel the company to include his device in their service.

The complainant does not bring himself within these limitations. He began by annexing to the defendant's circuit an apparatus of his own selection without first requesting the company to furnish him with an extension set or asking their terms for such extension of their service. In regard to the set which he uses, he has not made it clear that it is suitable for use with the grounded circuit which he hires of the company. The company itself does not use this apparatus in connection with grounded circuits. It is plain that the complainant has no right to insist upon a particular form of apparatus if the company is ready to furnish one which will substantially accomplish the same purpose and which is adapted to the circuit they operate. It does not appear from any evidence in the case that they have not been and are not now ready and willing to do this for a reasonable compensation. On the contrary they say they are willing, and offer to do so. In these circumstances, an injunction must be refused.

STINESS, C. J. (dissenting) Agreeing with the general statements of law in the foregoing opinion, I am unable to agree with its conclusion, which, to my mind, is inconsistent with it.

Having said that the defendant's proposition, that it should have the right to furnish and control the whole telephonic plant on the premises of a subscriber, cannot be assented to in full; and, further, that "such improvements as are

offered must not be accompanied with extortionate demands for compensation, so as to render the offer nugatory;" and that "If, however, the company neglects its duty to the public and is not provided with means to secure the accommodation of its customers, or, having at its command such appliances, refuses to furnish them except at exorbitant rates, we cannot question the right of the customer to supplement the imperfect service of the company with approved appliances procured elsewhere, provided that such appliances can be used in connection with the company's circuits without detriment to their harmonious operation," the logical result from the facts in this case is a decree for the complainant.

The opinion asserts the right of a subscriber to supplement the service of the company under two conditions, both of which appear in this case.

1st. If the company demands exorbitant rates.

The complainant now receives satisfactory service for $82.00 per year, and the company demands $220 for the same service. The extension instrument costs $12.50 at retail, and the company charges $18.00 per year for the use of it—at least one hundred and fifty per cent. of its cost. The additional charge is made for a metallic circuit, which is neither shown to be necessary nor of advantage to the subscriber or to the company, except in the matter of income to the company. Under these circumstances, the company's demand is manifestly exorbitant.

2nd. No detriment to the company is shown by the complainant's use of the extension set, either in its demand upon service or in safety.

On the contrary, the opinion is in favor of the complainant on both of these grounds.

I am, therefore, unable to see any sufficient reason for refusing the complainant's prayer for an injunction.

*Comstock & Gardner*, for complainant.

*D. S. Baker and Dexter B. Potter*, for respondent.