(*Circuit Court of Cook County. In Chancery.*)

### Elmer E. Beach, et al.

### vs.

### Chicago Telephone Company.

(October 17, 1906.)

1. RATES FOR TELEPHONE SERVICE—POWER OF COURT TO FIX. The court has no power to fix reasonable rates and charges for services performed by a public utility company.

2. TELEPHONE COMPANIES—RIGHT OF SUBSCRIBER TO ATTACH OWN EQUIPMENT. A provision in a contract between a telephone company and its subscriber that the subscriber shall not attach to the telephone company's wires any equipment or apparatus, not furnished by such company, is a valid regulation, and the subscriber is not justified in installing his own equipment.

3. SAME. This is true even though such attachments do not interfere with the company's service, as a multiplication of such attachments might seriously interfere with the efficiency of the service.

4. SAME—UNREASONABLE CHARGES FOR INSTALLATION OF EXTENSIONS. Nor is it material that the telephone company makes unreasonable charges for the installation of such attachments.

5. SAME—INJUNCTION. The subscribers are entitled to an injunction restraining the telephone company from interfering with their telephone service, conditioned, however, upon such subscribers removing the foreign attachments from their telephone.

Bill for injunction. Gen. No. 246,129. Heard before Judge Thomas G. Windes.

Statement of facts.

The bill was filed by complainants to restrain the defendants from interfering with the complainants' telephone serv-

ice. The bill alleged that the complainants were engaged in the general practice of the law and for that purpose occupied certain offices in the city of Chicago; that the defendant was organized to conduct a telephone business and operated in the city of Chicago under a certain ordinance from the city prescribing the rates for telephone service; that said defendant has a monopoly of the telephone business in said city; that said defendant required its subscribers to enter into a contract providing for the installation of the telephone service, under which contract the subscriber agreed to pay the sum of $175.00 a year; that said contract contained a number of conditions, among them a condition as follows:

"The lessee agrees not to make, permit or use any electrical or mechanical connections, contrivances or apparatus with the lines, instruments and equipment furnished by the lessor, without the consent of the lessor."

The said defendant also furnished to its subscribers what is known as an extension or branch telephone, by which the subscriber could talk over the telephone wire through said extension without going to the main telephone; that said complainants made application to the defendant for the installation of such extension, but it refused to do so unless complainants would pay certain charges for the same; that said charges were unreasonable and extortionate; that complainants then made application to an independent electrical company for the installation of said extension apparatus, and said electrical company installed the same and made connection with said defendant's wires; that the instruments and equipment furnished by said electrical company were in every respect as desirable and as efficient and practicable as those furnished by the defendant, and are made of as good material and constructed in a thoroughly workmanlike manner; that by the use of said extensions, the use of said defendant's wires is not in any way increased as but one person can use the telephone at the same time; that after the installation of said extensions, said defendant's agents entered complainants' offices, and cut the wires which connected said switch board and extension of complainants, with the defendant's wires,

and thereupon threatened to entirely discontinue complainants' service if said wires were again connected; that thereupon said complainants applied to defendant for permission to attach its extension system to said defendant's system, and offered to pay a reasonable price for such permission, but said defendant refused to permit said connection under any condition whatever; that the attaching of said system to defendant's system does not in any way affect the service of the defendant, except to render it more efficient, and does not impose any additional burden on said company or its service, and does not in any way cause it additional expense, labor or time, nor does it require the use of any more or different circuit or service but is a saving of time to said complainants and said defendant; that the use of said system does not interfere with defendant's service, or that of any of its patrons; that complainants are willing that said defendant should keep said system in repair and have the oversight and care of same, and complainants offer to pay a reasonable charge therefor. The bill prays for an injunction to restrain the defendant from refusing to furnish service to complainants, and from interfering with the said equipment and telephone service, and also that the conditions of the contract with respect to the installation, etc., be declared illegal and void. A preliminary injunction was issued in accordance with the prayer of the bill. A demurrer to the bill was filed and withdrawn, and an answer filed.

The answer alleges in substance that the use of extension telephones greatly increases the difficulties of successful telephone operation; that a telephone exchange system is a most delicate structure requiring the utmost mechanical and electrical skill to keep it balanced, and the different parts in proper adjustment and relation to each other, and the greater the number of terminals and connecting wires, the greater the likelihood of interference and interruption of service; that it is necessary for successful telephone operation that all parts of the system should be under one control, and the instruments according to a common standard, and that the company responsible for the successful operation should have the

choice of instruments; that any arrangement giving subscribers the right to connect other apparatus to the defendant's equipment would result in disaster; that the installation of any extension increases the use of the telephone by affording additional convenience to the subscriber and increases the cost of operation to the defendant. Evidence was heard in open court to support the bill and answer, and the decision of the court was rendered on final hearing.

*Beach & Beach, Smoot & Eyer* and *Julian C. Ryer,* solicitors for complainants.

*Holl, Wheeler & Sidley,* solicitors for defendant.

WINDES, J.:—

As I understand counsel on both sides, they concede the law to be that this court can not in this case fix what it deems a reasonable rate,—am I right?

MR. MOORE: Yes.

MR. HOLT: So far as we are concerned, certainly.

THE COURT: Is that the way you look at it, Mr. Beach?

MR. BEACH: Yes.

THE COURT: I was in doubt all along in the case as to whether the court had any power with regard to the fixing of rates and inasmuch as counsel on both sides agree, I will not take the time to investigate the law on the question, inasmuch as I have so many different cases pressing upon me for hearing just now. Neither will I attempt to review the numerous authorities and arguments of counsel in the case. It is a very interesting case and I would be glad to do it, but there is a limit to my powers as well as the defendant's powers.

All through the trial of the case, it was a very uncertain question in my mind as to whether this contract which prevents the complainants in this case from making any foreign attachments to the defendant's wires was a valid contract and whether or not the rule of the company in that regard was a reasonable one, but after listening to all the arguments in the case, I think, considering the character of the service that the defendant company has to render, the extent of that service and especially the concession of complainants' counsel in

this case—and I think it was a reasonable concession in view of all the evidence in the case—that inferior instruments and improper installments would have a detrimental effect upon the service that the defendant is performing for the public here, the conclusion is justified that the contract is not an invalid contract, that the regulation of the company in that regard is not an unreasonable one, because to protect its service and make that service practical to its 117,000 subscribers here in Chicago, I think requires that the company not only have the right to inspect and repair all its apparatus but that it should have the complete control of the apparatus and should have the right, under reasonable regulations, to say whether or not there shall be any foreign attachments to its telephone system in the city. Of course, what would be a reasonable regulation in the case of attachment of foreign instruments does not arise in the case and the court could only determine that, I should think, upon a specific case made. And although I think the weight of the evidence is, in this case, that the complainants' foreign attachments do not seriously interfere with the defendant's service, it means a great deal more to the defendant to allow these complainants to attach instruments than is involved in this specific case. If the complainants are allowed to attach foreign instruments, then every other subscriber in the city would have the same right and I can see that that would be likely to produce at least very serious disturbance and perhaps very seriously affect the service of the remaining subscribers, even if a few thousand only did what the complainants did in this case. I will not go into the details of my reasoning in that regard; suffice it to say that I think the testimony of most of the witnesses—including several of complainants' witnesses—is such that the results which I have suggested are likely to follow. The arguments of counsel as to the details of the possibilities of the effect upon the service, I think are reasonable arguments.

I have no doubt, from the evidence which has been produced here, that the charge which the defendant is shown to have demanded of the complainants for extension instruments

is a very unreasonable charge. I base this upon the schedule of prices charged in other cities and upon the charges made by the defendant itself here in the city. But, inasmuch as counsel have conceded that this court has no right to determine what is a reasonable charge, there is no use of going any further in that regard.

If I am right in the position that the complainants under the contract and under the regulations of the company had no right to make the foreign attachments here, then this bill can not be maintained upon the theory that they have the right to have the status which was in existence at the time of the filing of this bill maintained and the injunction which was issued in that regard in the first instance made perpetual, or at least continued until some time and under certain conditions which it is claimed that the court might specify, because by reason of those foreign attachments the court has no right to give any relief. I think, however, that because the defendant has demanded of these complainants an unreasonable price for the extension instruments,—while because of that the complainants had no right by virtue of their contract and under the regulations of the company to make foreign attachments—they are not deprived of all right to protection in a court of equity. They have a contract here which allows them telephone service "unlimited," I believe is the expression used in the contract, I have not looked at it—and since the defendant has done what seems to the court an unreasonable thing, I think that the complainants ought to be protected in their telephone service by the main instrument, notwithstanding these foreign attachments, if they will now comply with their contract and disconnect the foreign attachments. They would then be entitled to an injunction against the defendant from interfering with their telephonic service over the one instrument and I think that is the extent to which the court can go in this case. Because of that situation, I do not think it is necessary for the court to go into any discussion or decision as to whether or not there is a remedy at law here by way of *mandamus* to compel the defendant to do its duty and therefore that the complainant can have no

relief at all. So, I think that a decree should be entered in this case allowing the complainants an injunction protecting them in the use of their main instrument according to their contract on the condition that they disconnect the foreign attachments. That will be the decree of the court.

### NOTE.

In *Gardner v. Providence Telephone Co.*, 23 R. I. 262, 49 Atl. 1004, 55 L. R. A. 113, it was held that a telephone company, though having a monopoly of the business in a particular city, may deprive a customer of service upon his refusal to discontinue the use, in connection with its wires on his premises, of extension instruments not furnished by it, where it is able and willing to furnish such instruments as efficient and convenient as the state of the art affords, upon reasonable terms. It was also held that if the company refuses to furnish extensions except at exorbitant rates, the subscriber has the right to install his own equipment.