GEORGE HUFFMAN v. MARCY MUTUAL TELEPHONE COMPANY, Appellant.

**Telegraphs and telephones:** COMMON CARRIERS: DUTY TO FURNISH
1 SERVICE. Telephone companies are common carriers of intelligence and may be required to furnish equal facilities to all in like situations; and mere delinquency will not justify a refusal to restore service which has been withdrawn, if the patron pays the amount due and offers to pay for future service and to comply with the reasonable rules of the company.

**Same:** RESTORATION OF SERVICE: *Mandamus*. Where telephone serv-
2 ice has been withdrawn from a patron because he annoys other patrons upon the same line, by interrupting conversations and using profane and indecent language, but who refrains therefrom upon notice to do so, pays all delinquencies, tenders the price of future service and compliance with all reasonable rules, such patron may by *mandamus* compel restoration of the service.

**Withdrawal of service:** WHEN JUSTIFIED. A telephone company has
3 power to adopt reasonable rules and regulations for the transaction of its business. But even though no rule covering the question has been adopted the company may withdraw the service from one who has purposely made improper use of a party line, by indulgence in improper language and interference with the conversation of other patrons, which has been persisted in after notice to desist.

*Appeal from Boone District Court.*—HON. ROBERT M. WRIGHT, Judge.

WEDNESDAY, JUNE 30, 1909.

REHEARING DENIED FRIDAY, SEPTEMBER 24, 1909.

ACTION to compel defendant to place a telephone in plaintiff's residence, and to furnish him service over its line. From decree as prayed, the defendant appeals.— *Affirmed.*

*Ganoe & Ganoe,* for appellant.

*Whitaker & Snell,* for appellee.

LADD, J.—The defendant company operates a telephone system in Ogden with twenty-three lines extending therefrom into the surrounding country. One of these lines extended to the residence of plaintiff, and had six patrons. He was one of these until November 8, 1907, when the company removed the telephone, and refused further service. Thereupon he paid what was owing it, tendered customary advance charges for putting in an instrument and making connections, and demanded that the service be restored. This was refused, on the ground that plaintiff had forfeited the right thereto by the use of profane, vulgar and indecent language over the line, and by interfering and permitting members of his family to interfere, with the use thereof by others. No question is raised but that telephone companies are, to a limited extent, and yet in a strict sense, common carriers of intelligence and news, and are bound to afford equal facilities to all in like situations. They must supply all alike who are alike, and cannot discriminate against anyone. *State v. Citizens' Tel. Co.,* 61 S. C. 83 (39 S. E. 257, 55 L. R. A. 139, 85 Am. St. Rep. 870); *Webster v. Nebraska Tel. Co.,* 17 Neb. 126 (22 N. W. 237, 52 Am. Rep. 404); *Garner v. Providence*

*Marginal note:* 1. TELEGRAPHS AND TELEPHONES: common carriers: duty to furnish service.

*Tel. Co.,* 23 R. I. 262 (49 Atl. 1004); *Godwin v. Tel. Co.,* 136 N. C. 258 (48 S. E. 636, 67 L. R. A. 251, 103 Am. St. Rep. 941); *State v. Bell Tel. Co.* (C. C.) 23 Fed. 539; Jones on Telegraphs & Telephones, sections 243, 246; 26 Cyc. 375; 27 American & English Ency. of Law (2d Ed.), 1021. Though a patron may have been delinquent, this will furnish no excuse for refusal to restore the service if he shall pay the amount for which he is delinquent, and tender the price of service, with compliance with the reasonable rules and regulations of the company. *Webster v. Neb. Tel. Co., supra; State v. Citizens' Tel. Co., supra;* Jones on Telegraphs & Telephones, section 251. The remedy in event of refusal is by writ of *mandamus.* Jones on Telegraphs & Telephones, section 254, and cases cited above. As said, these propositions are not controverted.

The sole issue on which the cause is submitted is whether the right to telephone service had been forfeited by plaintiff. As there was but a single line, and each

2. SAME: restoration of service: *mandamus.*

patron was indicated by particular rings of the bell, others than those talking, innocently in ascertaining whether the line were in use, or as eavesdroppers, might hear conversations in progress, or expressions directed to them. At one time when plaintiff was conversing over the line, he was disturbed by some one, as he testified, by putting the receiver over the transmitter and whistling, and he remarked: "That sounds nice; it sounds like it might be a 'chippy.'" According to several witnesses to whom he related the incident, he said it might be an old "chippy," and the manager of the company testified that he had told him that he had said: "It is the G— d— chippies on the line." There was evidence that at another time he called up one of the patrons, toward whom he entertained ill feelings, and blatted like a sheep in the telephone, though he denied this. His daughter was proven to have taken down the receiver on one occasion, listened, and then rattled the receiver holder and trilled in

the transmitter.  Patrons of the line, as well as those in charge of the switch board, testified that there had been much disturbance on the line by way of interrupting conversations by talking in the telephone or in ringing the bell, all of which ceased upon terminating service for plaintiff.  On the other hand, plaintiff denied having caused such disturbance, as did his wife, and both to having properly instructed their children.  He admitted having employed the word "chippy," but explained that this was to ascertain who was interfering, and that no profanity accompanied it.  In the latter part of August, or fore part of September, when plaintiff told the manager of the use of such word, and inquired if there had been complaints of his disturbing the line, he was answered in the affirmative. He then inquired if this came from two families named, and the manager warned him that such language over the line could not be tolerated, and that unless he quit disturbing the line he would take out his telephone.  There was no evidence of improper language or of any disturbance after this time, though the manager testified that a complaint came in later, and that he was notified by one patron, that, unless the service for plaintiff was discontinued, he might remove the telephone from his residence.  No one can well defend the language employed by plaintiff.  As a witness he admitted its impropriety.  And though not chargeable with all the disturbance on the line, we entertain no doubt but that both he and one of his children at least had abused the privileges accorded them, and so far ignored the golden rule as to have made use of the line as a vehicle of petty spite toward two of his neighbors.  But it does not appear that they persisted upon being warned that such conduct would not be tolerated, nor that they were guilty of any impropriety thereafter during the two months intervening between such warning and the removal of the telephone.

Much is said in argument of the right of such a com-

pany to adopt reasonable rules and regulations for the transaction of its business. That it might have established such rules is not open to debate. *Cedar* *Rapids Gaslight Co. v. City of Cedar Rapids,* (Iowa), 120 N. W. 966. But we have discovered none in the record before us, and it would scarcely seem necessary to prescribe in advance a rule prohibiting the employment of profane, vulgar or indecent language over a telephone line, especially when this is likely to be heard by third persons, or prohibiting interference with the use of the line by others. Such a line, when used in common, enters many family circles, and the proprietor is warranted in assuming, at least until the contrary appears, that its patrons will have regard for the ordinary amenities of life, and observe the courtesies common to civilized society. Upon discovery that in this it has been mistaken as to any subscriber, and that, notwithstanding being duly warned, he persists in the use of improper language over the line, or purposely interferes in conversations between other patrons of the system in order to annoy or interrupt their conversations, or force them to yield the line for his own convenience, and this is persisted in after being duly warned to desist therefrom, there would seem to be but one adequate remedy, and that is to withdraw the service from such person. Jones on Telegraphs & Telephones, section 250. Otherwise the efficiency of the enterprise would be impaired or destroyed, and the proprietor fail in furnishing the character of service impliedly promised. The very nature of the service undertaken exacts control to this extent, for without the power to withdraw it under the circumstances mentioned, there could be no assurance of its character or efficiency. A single patron by meddling and discourtesy might deprive his neighbors of the benefits of a convenient invention, and destroy the value of the property devoted to the public service. This power to regulate is essential in order to enable the defendant to perform

3. WITHDRAWAL OF SERVICE: when justified.

. . . .

such service, and is clearly to be implied from the nature of the enterprise. But it ought never to be arbitrarily exercised. Reasonable caution must be taken lest injustice be done. Some allowance is to be made for the infirmities of human nature. Local customs are not to be ignored. Habit sometimes excuses, if it does not justify, the use of objectionable language. Early environment, more often than an evil spirit, is responsible for bad manners. Undisclosed emergencies may extenuate lapses from propriety. So that, when rules to guide patrons have not been promulgated in advance, it is not unreasonable that any patron misusing his privileges be duly warned thereof by the telephone company, and given an opportunity to mend his ways, before being finally deprived of this most convenient means of business and social communication. Such was the course pursued by defendant, with the result that, insofar as appears, the objectionable conduct ceased, and apparently the telephone was removed two months later owing to the threat of another patron, rather than because of any persistent interference with the service by plaintiff. The decree directing the restoration of the telephone and connections has our approval.—*Affirmed.*