## NORTHERN KENTUCKY TELEPHONE CO. v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO. et al.

### No. 3939.

District Court, E. D. Kentucky.

Aug. 29, 1932.

Wm. J. Donovan, Bethuel M. Webster, Jr., and Breck P. McAllister, all of New York City, and M. J. Hennessey, of Augusta, Ky., for plaintiff.

Trabue, Doolan, Helm & Helm, of Louisville, Ky., and E. D. Smith, of Atlanta, Ga., for Southern Bell Telephone § Telegraph Co.

Carl M. Jacobs, of Cincinnati, Ohio, for Cincinnati & Suburban Telephone Co.

Myers & Howard, of Covington, Ky., for Citizens' Telephone Co.

ANDREW M. J. COCHRAN, District Judge.

This action is before me on plaintiff's demurrers to the second paragraph of each of the answers of the defendants, and motions to strike from the first paragraph certain portions thereof. The defendants ask that these demurrers be carried back to the petition, which they claim to be insufficient, and have also filed demurrers thereto.

Proper disposition of these matters calls for an accurate understanding of the nature of the cause of action set forth in the petition, and of its allegations. The action is brought under section 7 of the Sherman Anti-Trust Act (15 USCA § 15 note) to recover treble damages for a conspiracy in restraint of interstate commerce, declared illegal by section 1 of the act (15 USCA § 1), amounting to the sum of $1,050,000, and attorney's fees. The petition consists of sixteen literary paragraphs each separately numbered. The first eight set forth inducement matter, the next six the cause of action, the next the damages sustained, and the last the prayer. The inducement is concerned mainly with the parties to the action. The plaintiff is a Delaware corporation. It was organized in 1926 to engage in the telephone business in Bracken and adjoining counties in this district, by furnishing to the residents thereof telephone service between points within this state, and, through physical connections and agreements with other telephone

companies, in interstate commerce. In furtherance of this purpose, it installed a telephone plant in Bracken county, and in 1926 acquired the plant of the Robertson County Telephone Company, in Robertson county, which adjoins Bracken county on the South, which company had a telephone exchange at Mt. Olivet, its county seat, and on or about January 1, 1927, it began the operation of both plants, and has continued to operate same ever since. It has about 550 subscribers in Bracken county, and approximately 200 in Robertson. The telephone exchange at Mt. Olivet, then and ever since, has had physical connection with plaintiff's exchange in Bracken county, and with that of the defendant Southern Bell Telephone & Telegraph Company. That company is a New York corporation, with office and place of business at Louisville. It then, and ever since has, operated and does now operate and maintain telephone exchanges and telegraph lines between points in Kentucky, and between points in Kentucky and points in all parts of the United States and in foreign countries, either by agreements with other telephone companies with whose lines it has physical connection, or by its own lines.

The defendant Cincinnati & Suburban Bell Telephone Company is an Ohio corporation, with principal office and place of business in Cincinnati, Ohio. During the times set forth in the petition it carried on the telephone business by telephone exchanges and telegraph lines between points within Ohio, between points in Ohio and points in this state, and between points in all parts of the United States by agreements with other companies with whose lines it connected, or by its own lines. The defendant Citizens' Telephone Company, a wholly owned subsidiary of the Cincinnati & Suburban Bell Telephone Company, is a Kentucky corporation, with its principal office and place of business in Cincinnati, Ohio, and an office and place of business in Covington, in this district. During those times it has carried on the telephone business by telephone exchanges and telephone lines between points within Kentucky, and between points within Kentucky and points in all parts of the United States and foreign countries by agreements with other companies with whose line it connects, and by its own lines.

The inducement sets forth certain facts as to another telephone company which is not sued. It is the Kentucky State Telephone Company, a Delaware corporation with an office and place of business in Lexington, Ky., and also in Brooksville, county seat of Bracken county. It is engaged in the telephone business. In or about 1928 it acquired the telephone business and property of the Bracken County Telephone Company, a corporation then and theretofore engaged in the telephone business in Bracken and adjoining counties, between points within Kentucky, between points within Kentucky and points in all parts of the United States and in foreign countries by agreements with the defendant Southern Bell Telephone & Telegraph Company with which it had physical connections, which business it has carried on ever since. In the last paragraph of the inducement it is set forth that plaintiff had made application to each of the defendants for a physical connection between its lines and those of the defendants, and for interchange of telephone messages between its subscribers and points in the telephone lines of defendants and points in the telephone lines of companies whose telephone lines were connected throughout the United States and foreign countries, so that it might engage in interstate telephone business. Nothing is said in this paragraph as to the result of such application.

This brings us to the next six paragraphs which set forth plaintiff's cause of action. The ninth paragraph has to do with the conspiracy and the other five with what was done in furtherance thereof. It is alleged in the ninth paragraph that the defendants, the Bracken County Telephone Company, Kentucky State Telephone Company, and others whose names were unknown to plaintiff, on or about January, 1927, and continuously therefrom until the filing of the petition engaged in a conspiracy to restrain (which conspiracy had restrained) plaintiff's interstate commerce in the manner and by the means thereinafter set forth, and that they had so done with the intent and purpose of injuring plaintiff and excluding it from interstate commerce, and in execution of such conspiracy and to accomplish its objects they had done the acts set forth in the succeeding five paragraphs.

The first act, set forth in the tenth paragraph, is that the Bracken County Telephone Company and the defendant Citizens' Telephone Company connived and co-operated to oppose the application of plaintiff for a franchise before the fiscal court of Bracken county, and employed attorneys to oppose such application, and by these and other acts compelled plaintiff to resort to protracted and expensive litigation to establish its right

to such franchise. They opposed the granting of a franchise to plaintiff at every step in the application and litigation. The fiscal court of Bracken county had no power to grant the plaintiff a franchise to operate and engage in the telephone business. What was meant is that plaintiff applied to that court for a grant of the right to use and occupy the public highways of Bracken county for the erection and maintenance of its telephone lines. It was this application which these two companies opposed. It was not alleged when this application was made and granted, but it appears from the case of Northern Kentucky Mutual Telephone Co. v. Bracken County, 220 Ky. 297, 295 S. W. 146, that it was some time in 1926 and 1927. No other defendant is charged with taking part in this opposition than the Citizens' Telephone Company, though if prior thereto there was the conspiracy alleged the other two defendants were chargeable therewith. It is not unlikely that the Bracken County Telephone Company's line was physically connected with that of this defendant, and there was interchange of messages between the two lines, though this is not alleged. The Bracken County Telephone Company, no doubt, opposed the application because the undertaking of plaintiff was an attack upon its business in Bracken county, and may have threatened its life. If the defendant Citizens' Telephone Company was so connected with that company, it no doubt joined in the opposition because of sympathy with its business associate and with a desire not to have to deal with two companies in handling Bracken county business. The granting of the application did not necessarily involve interstate commerce on the part of plaintiff. It was only necessary in order that it might engage in such commerce. To that end it was essential for plaintiff to obtain an interstate line or form an interstate connection.

The second act, set forth in the eleventh paragraph, is that in or about February, 1927, the defendants Southern Bell Telephone & Telegraph Company and Cincinnati & Suburban Telephone Company refused to agree with plaintiff to an interchange of messages between plaintiff's subscribers and points throughout the United States and foreign countries by means of a physical connection of their lines with the line of the Higginsport Telephone Company in Higginsport, Ohio, situated on the Ohio river opposite Bracken county, with which they had an agreement for the interchange of messages, and because thereof it did not effect a physical connection between its line and that

of that company for which it was negotiating, and was not in this way put in position to do interstate business. I do not understand that plaintiff desired any connection with the Higginsport Telephone Company, unless it could obtain such an agreement from those defendants. It is not alleged whether both of the defendant companies had physical connection with the Higginsport Telephone Company, which is not likely, and if only one, which one. Nor is the exact relation between the two defendants set forth.

The third act, set forth in the twelfth paragraph, is that on or about April, 1927, those two defendants refused to agree to such interchange of messages by means of a physical connection of their line with the line of the Felicity Home Telephone Company in Felicity, Ohio, also situated on the Ohio river opposite Bracken county, and nearer Cincinnati than Higginsport, with which they had an agreement for interchange of messages, and because thereof it did not effect a physical connection between its line and that of that company for which it was negotiating, and was not in this way put in position to do interstate business. It is alleged that these defendants threatened that company that if it made a physical connection with plaintiff and entered into an agreement for interchange of messages they would disconnect and cease business relations with it. Here, as in the case of the Higginsport Telephone Company, I do not understand that plaintiff desired any connection with the Felicity Home Telephone Company, unless it could obtain such an agreement from those defendants.

The fourth act, set forth in the thirteenth paragraph, is that in December, 1926, after plaintiff had acquired the plant of the Robertson County Telephone Company, with whose line the line of the defendant Southern Bell Telephone & Telegraph Company was connected in Mt. Olivet, and between which defendant and that company there was an agreement for interchange of messages, defendant refused to enter into an agreement with the plaintiff for an interchange of messages other than those covered by its agreement with that company, and because thereof it was not in this way put in position to do interstate business. It is further alleged that the defendant Southern Bell Telephone & Telegraph Company threatened to discontinue contracts for long-distance service with other independent telephone companies in the event such independent telephone companies should establish physical connection with

plaintiff or enter into agreements for the interchange of messages with plaintiff, and as a result thereof it was compelled to resort to litigation to establish its right to such physical connection and agreement. There is no allegation as to when this took place or as to the specific company involved.

The fifth act, set forth in the fourteenth paragraph, is that on or about the early part of 1927, the defendant Citizens' Telephone Company refused to make a physical connection with plaintiff, and to enter into an agreement for interchange of messages upon its application that it so do.

The fifteenth paragraph sets forth the damages which the plaintiff claims that it is entitled to recover. It consists of four items, to wit:

(1) $50,000 on account of being deprived of the rentals and revenue which it would otherwise have secured had it been able to furnish its subscribers with long-distance service, and by reason thereof it has been unable to conduct its business at a profit.

(2) $150,000 on account of being deprived of the opportunity to secure additional subscribers, and of the rentals and revenue which it would have secured from them had it been able to furnish them with long-distance service.

(3) $25,000 expended on enforcement of its right to secure franchises and long-distance service.

(4) $125,000 for injury to its credit and inability to finance the purchase of additional properties in the normal expansion of its business.

█ This suit was brought May 2, 1931. It thus appears that it was brought to recover damages occasioned by certain acts done in pursuance of a conspiracy entered into on or about January, 1927, which acts themselves were all done and all damages arising therefrom occurred more than one year prior to the bringing of the action. The second paragraph of the answer of each of the defendants pleads a statute of limitation of Kentucky in bar of the action. It is to this paragraph that the plaintiff has demurred. If this plea is good, then the petition on the same ground is bad, as it appears therefrom that the time relied on as a bar had run before it was filed. In such a case as this, the bar of the statute of limitation can be raised by demurrer to the petition as well as by plea. 17 R. C. L. p. 994. The statute relied on is section 2516, Kentucky Statutes, providing a bar of one year in certain cases. That stat-

ute is in these words: "An action for an injury to the person of the plaintiff, or of his wife, * * * ward, apprentice, or servant, or for injuries to persons, cattle or stock, by railroads, or by any company or corporation; an action for malicious prosecution, conspiracy, arrest, seduction, criminal conversation or breach of promise of marriage; an action for libel or slander, an action against any physician or surgeon for negligence or malpractice; an action for the escape of a prisoner, arrested or imprisoned on civil process, shall be commenced within one year next after the cause of action accrued, and not thereafter."

█ It is the claim of the defendants that this action is one for conspiracy within the meaning of this section, and, as the cause of action accrued more than one year before it was brought, it is barred. There is no question that the matter of limitation is governed by the state statute if it applies. Chattanooga Foundry & Pipe Works v. Atlanta, 203 U. S. 390, 27 S. Ct. 65, 51 L. Ed. 241. It is said by plaintiff that this statute is pleaded as a bar, not to the bringing of the action, but to the recovery of damages that occurred prior to one year before the filing of the petition. This may be a true construction of the plea, but as all the damages sought to be recovered so occurred it may be and should be treated as a plea in bar to the action. But whether this is so or not the demurrer when carried back to the petition raises the question as to whether the action is barred.

█ The plaintiff urges two grounds why this action is not barred by this statute. One is that this is not an action for conspiracy. It does not say within the meaning of the statute, but such must be taken to be its position. If this action is an action for conspiracy within such meaning, it is covered by it. It is only in the contingency that it is not that such is not the case. Plaintiff urges that it is not because it is an action to recover damages occasioned by acts done pursuant to a conspiracy, and not an action for the mere conspiracy. It emphasizes that no action can be brought for a conspiracy. A party may be subject to indictment for being a party to a conspiracy, but he is not subject to an action for damages because of such fact alone. All this is true. In the case of Nalle v. Oyster, 230 U. S. 165, 183, 33 S. Ct. 1043, 1048, 57 L. Ed. 1439, it was said: "But the well-settled rule is that no civil action lies for a conspiracy unless there be an overt act that results in damage to the plaintiff."

The plaintiff quotes from Sidney Morris

& Co. v. National Ass'n of Stationers (C. C. A.) 40 F.(2d) 620, 624, this: "The gist of such action is not, as appellees assert, the conspiracy, but it is the damages for which the wrongdoer and all who conspire with him are liable."

It also quotes from United States v. Pan-American Petroleum Co. (C. C. A.) 55 F. (2d) 753, 778, Lord Holt's statement in 1 Lord R. 374, this: "An action will not lie for the greatest conspiracy imaginable, if nothing be put in execution."

But these expressions and the position taken in them get one nowhere. They have nothing whatever to do with the question as to what the statute means when it provides that an action for conspiracy is barred after the lapse of one year from the time the cause of action accrued. To say that it does not mean an action to recover damages for things done pursuant to a conspiracy is to stick in the bark. If it does not mean that, what does it mean? It certainly does not have reference to an action which cannot be brought, to wit, an action for a mere conspiracy. It was not necessary to provide a bar for such an action because it cannot be brought one second after the conspiracy is formed. It can never be brought. All actions at law are actions to recover something, either property or damages. Those covered by section 2516 are actions to recover damages. To make it plain that such was their nature, it was not necessary to express this. Every one knows that such is the meaning of the statute. If such then is its meaning as to the other ten specifications such is the meaning as to the one in question. What the statute means is an action to recover damages for acts done in pursuance of a conspiracy. To refer to it as an action for conspiracy is a brief way of expressing its thought. A Legislature has the right to economize its words, particularly where it is perfectly plain what is meant. I say it means this because such is the reasonable construction of the words, and it can mean nothing else.

The other ground upon which plaintiff urges that this action is not covered by section 2516, Ky. St., is that it is covered by the preceding section 2515, which provides for a five years' statute of limitation for "an action upon a liability created by statute, when no other time is fixed by the statute creating the liability," and this is an action upon such a liability. It is an action on section 7 of the Sherman Anti-Trust Act. It is true that it is such a liability, but it does not follow that it is covered by section 2515 and not by sec-

tion 2516. In the case of City of Covington v. McNickle's Heirs, 18 B. Mon. (Ky.) 262, 286, it was said: "A well known rule for the construction of statutes, which, though ancient, is always adhered to, is that the general words in one clause of a statute may be restrained by the particular words in a subsequent clause of the same statute."

This is a case for the application of this rule. In two other specifications the liability is a statutory liability to wit, in an action for injury to the person resulting in death, and in an action for escape of a prisoner. In the case of Irwin v. Smith, 150 Ky. 147, 150 S. W. 22, it was held that an action for personal injury resulting in death, which was a statutory liability, was governed by section 2516, and not by section 2515. The liability for escape of a prisoner is based upon section 466, Kentucky Statutes, giving a right of civil action to a party aggrieved by the escape of a prisoner in violation of sections 1238, 1239, 1357, 1338, and 2749, Kentucky Statutes. So as to action to recover damages for acts done in furtherance of a conspiracy or, for short, an action for conspiracy, though it arises out of a statute it is covered by section 2516 and not by section 2515. Section 2516 takes it out from section 2515.

Section 2515 also provides for a five-year limitation as to an action upon an oral contract. In the cases of Howard v. Middlesborough Hospital, 242 Ky. 602, 47 S.W.(2d) 77, Roush v. Wolfe, 243 Ky. 180, 47 S.W. (2d) 1021, it was said that an action for "an injury to the person" in violation of an oral contract is governed by section 2516 and not by section 2515.

But it is said by plaintiff that the petition alleges that the conspiracy has continued from January, 1927, to the bringing of the action. This, if so, rendered the defendants liable to indictment at the time this action was brought (United States v. Kissel, 218 U. S. 601, 608, 31 S. Ct. 124, 54 L. Ed. 1168), but it did not save plaintiff's right of action to recover damages. It has emphasized the fact that there can be no recovery for the mere conspiracy itself. Nothing was done in furtherance of the conspiracy within the year prior to the bringing of the action, and I do not understand the petition to claim that it sustained any damage during the year arising out of acts done previously. The conspiracy to exclude plaintiff from interstate commerce was fully executed in the early part of 1927, and all the damages that could possibly accrue therefrom were recoverable upon its execution, and the petition in its claim for dam-

ages proceeds on this idea. I am therefore constrained to hold that plaintiff's demurrer to the second paragraphs of defendants' answers be overruled, and that it be carried back to the petition and sustained on this ground.

I might quit here, but I think that mention should be made of other possible grounds upon which it should be sustained. The defendants urge that the Interstate Commerce Commission has exclusive jurisdiction over the matter in question here under the undue preferences and prejudices provision of the Transportation Act of 1920 (Interstate Commerce Act, as amended by), § 3, par (1), title 49, USCA, § 3(1), and that such is the case follows from the decision of the Supreme Court in the case of U. S. Navigation Co. v. Cunard, 284 U. S. 474, 52 S. Ct. 247, 76 L. Ed. 408, which arose under the Shipping Board Act (46 USCA § 801 et seq.). I have not considered this position sufficiently to form an opinion in regard thereto. But there are other difficulties in plaintiff's way, which have not been referred to by counsel on either side, which seem to me sufficiently serious to make note of them. This case is a novel one in three particulars.

First. It does not involve a conspiracy in relation to already existent interstate commerce. The conspiracy relied on is directed against one who was not engaged in interstate commerce, but desired to become so. Its object was not to affect injuriously one who was then engaged in such commerce, but to keep one not so engaged out of it. Are such conspiracies covered by section 7 of the Sherman Anti-Trust Act? What makes me question whether they are is the provision of section 7 as to the person who is given the right of action. It is one "who shall be injured in his business or property" by the conspiracy denounced. Now it is possible for one not engaged in interstate commerce to be so injured by such a conspiracy. The case of Chattanooga Foundry & Pipe Works v. Atlanta, 203 U. S. 390, 27 S. Ct. 65, 67, 51 L. Ed. 241, was such a case. It was a suit by the city of Atlanta against two conspirators to recover damages which it had sustained by reason of having to pay too much for pipe purchased by it. The city had not been injured in its business by the conspiracy, but it was held that it had been injured in its property. Its property had been diminished. It was said: "A man is injured in his property when his property is diminished." So it is possible for one engaged in interstate commerce to be so injured by such a conspiracy. The case of

Loewe v. Lawlor, 208 U. S. 274, 28 S. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815, was such a case. The Danbury Hatters were engaged in interstate commerce, and the effect of the conspiracy complained of was to diminish their business and the value of their property used in such business.

But is it possible for one who is not engaged in interstate commerce, but desires to engage in it, to be injured in his business or property by a conspiracy directed against his engaging in it? Such a conspiracy does not diminish his interstate business or the value of his property used in such business, because he has no such business and owns no such property. The only business which can be affected is not interstate, and the only property which can be affected is not used in interstate commerce. How can such a business or property be injured, i. e., diminished in extent or value by the conspiracy? All that can be said is that thereby his property is prevented from increasing in extent or value. In order for one to be injured in his business or property, is it not essential that there be a diminution thereof? Can he be said to be so injured by a mere diminution of his prospects?

Second. Is it true to say that the conspiracy complained of was in restraint of plaintiff's engaging in the interstate telephone business? The defendants did nothing to restrain plaintiff from so engaging. They brought no pressure to bear on it to keep it out, and threw no obstacle in the way of its going in. The only hindrance to its so doing was the state of its finances. That was not sufficient to enable it to provide itself with an interstate line to the extent it desired. And the defendants were not responsible for such state to any extent whatever. All that can be said is that they refused to help it get into the interstate telephone business. That each defendant had a right to do this is held in the cases of Oklahoma-Arkansas Tel. Co. v. Southwestern Bell Tel. Co. (C. C. A.) 45 F. (2d) 995, 76 A. L. R. 944, State v. Northwestern Bell Tel. Co. (Iowa) 240 N. W. 252. Does one restrain another when he refuses to help him? There are two telegraph companies in this country; the Western Union, and the Postal. Suppose some one else desired to go into the telegraph business, and that by getting one or the other of these two companies to permit the use of its poles for that purpose, can it be said that if the two companies conspired to keep him from getting such permission from either that the two companies would be subject to indictment and liable

in damages for such conspiracy under the Sherman Anti-Trust Act? Would they restrain him from entering into such business, or would they simply decline to help him in so doing? It is said that defendants have "bottled up" the plaintiff. This is not a correct view of the situation. The defendants have not so done. It may be said that plaintiff is "bottled up," but what bottles it up is economics and not defendants. It is the lack of the requisite wherewithal and the disposition to use it to that end that brings this about. All that defendants have done is to refuse to unbottle it. And in so far as defendants can be said to have formed a bottle within which the plaintiff is situated, it is not the defendants that placed it there. It voluntarily placed itself there in its ambition to engage in the telephone business.

Third. Then does not the character of the business involved have something to do with whether the conspiracy complained of is covered by the Sherman Anti-Trust Act? That business is noncompetitive. By this I mean that competition is not practical in such business, and is not to the interest of the public. It is impossible for two telephone companies to operate successfully in the same community just the same as it is impossible for two electric light and power companies or two gas companies or two water companies to so operate in the same city. In such instances we always find a single company providing the service. For one such concern to enter the field already occupied by another means war to the death. It becomes a cutthroat affair, and it is only a question of time when one or the other goes under, and in the meantime the public suffers in the service. Such a business is a natural monopoly. In the case here, not only was there possibility of the public so suffering, but the highways of Bracken county would be subjected to two lines, and the citizens of the county in order to get good service all over the county would have to patronize two companies, and the long-distance companies would have to serve two companies instead of one. In such a case when a new company is preparing to enter the local field is it in violation of the Sherman Anti-Trust Act for the long-distance companies to sympathize with the existing local company, their business associate, and to agree not to furnish the newcomer with long-distance service? If it is in restraint at all, is it not a reasonable one?

These three features of this case make it a novel one under that act. No case has been cited dealing with either one of these features, and I am aware of none. All that I will now say is that each one presents a serious difficulty in the way of plaintiff's right to recover.

The disposition of the demurrer renders it unnecessary to dispose of plaintiff's motion to strike.