[No. 19564.  Department One.  November 5, 1925.]

YELTON & McLAUGHLIN, *as Co-partners, Appellants,* v.
THE DEPARTMENT OF PUBLIC WORKS *et al.,*
*Respondents.*[1]

CARRIERS (3-2)—REGULATION—CERTIFICATE OF PUBLIC NECESSITY—
PREFERENCE RIGHTS. On conflicting applications to operate a stage
line, an existing certificate holder, giving satisfactory service, and
operating over the route on January 15, 1921, is entitled to the
certificate, under Rem. Comp. Stat., § 6390, providing that certifi-
cates to operate a stage line in territory already served by a
certificate holder shall be granted only when the existing holder
will not provide service to the satisfaction of the commission; and
that certificates shall be granted to applicants who were actually
operating in good faith over the route on January 15, 1921.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered June 5, 1925, af-
firming, on review, an order of the department of public
works denying plaintiff's application for a certificate
of public convenience and necessity.  Reversed.

*Cleland & Clifford* and *S. M. Bruce,* for appellants.

*The Attorney General* and *H. C. Brodie* (*Vance &
Christensen,* of counsel), for respondents.

*Dalbert E. Twitchell, amicus curiae.*

HOLCOMB, J.—This appeal is to determine which of
two applicants, as a matter of law, is entitled to a cer-
tificate of public convenience and necessity, under the
provisions of § 4, ch. 111, Laws of 1921, p. 338; Rem.
Comp. Stat., § 6387.

Prior to 1921, appellants were operating a stage line
with motor propelled vehicles from Bellingham to Gla-
cier, and tributary territory east of Glacier.  Glacier
is forty miles east of Bellingham.  A poorly con-
structed road extended to the Washington forest re-

[1]Reported in 240 Pac. 679.

serve beyond Glacier, some seven miles, to a point known as the power plant.

In 1920, the Federal government and Whatcom county began the construction of an extension of the Bellingham-Glacier road, from Glacier east and south to a point known as Austin Pass, a distance of some twenty-two miles. This road would pass through a place called Shuksan. There was only one way of ingress and egress to the region surrounding the old road, and the region extending beyond the terminus of the old road to the power plant and Shuksan, and to Austin Pass. There are a number of mines and miners in that region. The new, or relocated road, from Glacier to Shuksan was completed in 1924, and the old, poorly-constructed road was abandoned.

In 1916, appellants began operating their stage line, transporting people desiring to go into the district from Glacier to the power plant and to the mines by auto stages. They transported workmen to and from logging camps, mines, and the construction camps on the road work. They also transported any one wishing to go into the district for recreation or travel. They supplied service to the public generally, prior to January 15, 1921. They have a contract to carry the United States mail. Their contract requires them to extend the mail service to Shuksan and to Austin Pass without additional compensation from the Government whenever the Postoffice department shall require it of them.

No complaint has ever been made of the service rendered by appellants, either by people in the communities served or by the public authorities. At the time of the hearing, they had five auto stages with a carrying capacity of from ten to thirty passengers each, and an investment of twenty thousand dollars.

Chapter 111, Laws of 1921, p. 338 [Rem. Comp. Stat., § 6387], went into effect June 18, 1921. During that summer, the public service commission required stage operators to present their applications for certificates of convenience and necessity, and descriptions of the routes over which they operated, with their schedules of time and tariffs. Appellants complied with that demand, setting forth that they were operating on a regular schedule between Bellingham and Glacier, with an extended service such as was desired and required over the roadway as it then existed to the construction camps. A certificate was issued to appellants over the then existing route with Bellingham and Glacier as termini. It was their declared intention to continue and extend their service as the road was completed toward Austin Pass, and when completed, they would file a new and complete schedule of time and tariff rates.

A syndicate of generous and public-spirited citizens of Bellingham, desiring to develop the vicinity of Mt. Baker as recreational grounds, guaranteed and assisted in the construction of the new road from Glacier toward Austin Pass. They procured a lease from the Federal government of five acres of ground in the Forest Reserve for the establishment of a resort at Austin Pass. All of the territory from Glacier to Austin Pass is in the forest reserve, and the Mt. Baker Development Company, as this syndicate was later known, was required to expend a large sum of money in developing hotel accommodations at the proposed resort. In 1924, the Development Company applied for a certificate of public convenience and necessity to operate a stage line from Bellingham to Austin Pass. The department notified appellants of the pendency of the Development Company's application. Appellants

thereupon filed a protest against the application, and themselves made an application to have their certificate extended to cover service to Austin Pass when the highway was completed, basing their claim upon two statutory grounds, namely: operation in good faith on January 15, 1921; and their right to extend the certificate and service in territory already served by them, and declaring their ability and willingness to render all the service the territory required, and their ability and willingness to provide further equipment if and as the same should be needed.

Upon a hearing upon this application, the department denied the application of appellants, and granted that of the Mt. Baker Development Company. The proceedings were reviewed, in the superior court, resulting in an order affirming that of the department.

The theory of the constituents of the Mt. Baker Development Company, as voiced by practically all of them testifying before the department, was that, since they had expended a very large sum of money in developing the Mt. Baker resort at Austin Pass and the road from Glacier to Austin Pass, and were required to expend a further large sum of money in developing hotel accommodations for travelers and others desiring to visit that region, and that they were desirous of controlling the number of visitors that might be carried by the public carriers to the resort, inasmuch as at times there might be more travelers than the resort would have accommodations for, their company was entitled to control the traffic to Austin Pass, and to a permit to carry passengers from Bellingham to Austin Park. The permit granted not only allows them to carry passengers between Glacier and Austin Park, but also over the entire route of appellants between Glacier and Bellingham, although it does not permit

them to take on passengers between Glacier and Bellingham.

To justify the granting of the permit to the Mt. Baker Development Company, the department made the following finding:

"Mount Baker and Mount Shuksan are beautiful mountains, the peaks of which are about eleven miles apart; and the country in and about them is wonderfully beautiful and attractive. About four years ago a little company of public-spirited citizens of Bellingham conceived the idea that Mount Baker and Mount Shuksan and the adjacent country could be made a great and popular summer play ground if it were made easy of access and possessed accommodations for the public. Without any idea of personal gain but prompted only by public spirit, they set about to see if this was possible of accomplishment. This region being in the National Forest was wholly under government control. The first essential was to build a road into it and this was highly expensive. They set about to persuade the government of the desirability of building such roads. Whatcom county had a fine road part of the way and a passable road the remainder of the way to the boundary of the forest, but within the forest there was no road worth mentioning. The government was persuaded to agree to pay two-thirds of the cost of building a road from Glacier to Austin Pass, which point was chosen as the most central and advantageous point for the resort. A condition of this agreement was that Whatcom county should contribute the other third of the cost of this road building. Whatcom county had difficulty in raising its third which amounted to more than one hundred thousand dollars. In order to finance the building of the road, these men guaranteed approximately one hundred thousand dollars of the cost of this road building. The road was started. This road building will be completed, according to present expectations, during the summer of 1925. Since it goes through a rough, heavily timbered mountainous country, it will not be possible to reach Austin Pass

15—136 WASH.

with vehicles until the road is completed. Since the purpose of the government in this expenditure was not only to open a highway into the forest, but to advertise the national forest and to furnish a play ground for the people, as a condition precedent to entering upon the project, they required these men to enter into an agreement in writing to construct and maintain a summer resort and a general store and to expend in the construction thereof within three years from the date of the said agreement not less than twenty-five thousand dollars. Since it was not possible to get lumber into Austin Pass until the road was constructed, tents were used principally for the accommodation of the public. This resort has been in operation for two years. The evidence shows that these men are abundantly able and willing not only to expend the twenty-five thousand dollars but whatever additional sums may be necessary in order to make this a creditable and popular resort."

The above findings furnish justification for the order, were there no controlling statute to the contrary.

The trial court, on review, thought the case governed by the cases of *State ex rel. United Auto Transportation Co. v. Department of Public Works*, 129 Wash. 5, 223 Pac. 1048, and *Stolting v. Kuykendall*, 131 Wash. 392, 230 Pac. 405, and cases there cited.

Section 4, ch. 111 Laws of 1921, p. 341 (§ 6390, Rem. Comp. Stat.) provides:

"The commission shall have power, after hearing, when the applicant requests a certificate to operate in a territory already served by a certificate holder under this act, only when the existing auto transportation company or companies serving such territory will not provide the same to the satisfaction of the commission, . . ."

The same section also provides:

". . . but a certificate shall be granted when it appears to the satisfaction of the commission that such person, firm or corporation was actually operating in

good faith, over the route for which such certificate shall be sought on January 15, 1921."

There is no doubt that the intention of the legislature was that one operating as a stage carrier when the law went into effect should be preferred as against one who had not operated on that particular route, and made it mandatory to grant a license or certificate to the operator who is operating over the designated route, in good faith, to the exclusion of anyone else, if such operator desired to continue to operate over that route and signified his willingness and ability so to do.

Appellants not only served the people as a public carrier on both sides of the road over which they operated under their certificate of convenience and necessity, but also served the people beyond the terminus of the road at Glacier, who had no other private transportation. They furnished special facilities for the carriage of freight and passengers to the power plant, and to Shuksan when the road was open that far so that it could be traveled, and stand ready, and have at all times stood ready, to furnish transportation to Austin Pass when the road is open.

The Development Company has never operated any transportation vehicles between Glacier and Austin Pass, or between Glacier and Bellingham.

The cases referred to by the trial court are none of them like this case. In *State ex rel. B. & M. Auto Freight v. Department of Public Works,* 124 Wash. 234, 214 Pac. 164, referred to in the later case cited by the trial court in 129 Wash. 5, 223 Pac. 1048, *supra,* we held that the findings of the department should not be disturbed unless they show evidence of arbitrariness and a disregard of the rights of the parties to the controversy. And in the later cases cited by the

trial court, we held the same thing. In none of these cases were the statutes cited and quoted above involved. In all those cases except in 129 Wash. 5, 223 Pac. 1048, *supra,* where there was a substantial deviation in route and terminus, there were simply conflicting applications for new and independent certificates of necessity and convenience involved.

In the case at bar, we have no doubt whatever that, under the statutes above quoted, appellants, having signified their desire, willingness, and ability to continue their transportation business into the newly opened territory which they have been serving theretofore as necessity required, should be granted the certificate to the exclusion of anyone else. It is simply a statutory right which cannot be denied them under the evidence in this case. The findings and order of the department are arbitrary and in disregard of the statutory rights of appellants.

The judgments of the trial court and the department of public works are, therefore, reversed with instructions to grant a certificate of convenience and necessity to appellants upon the application presented to the department.

Tolman, C. J., Askren, Mackintosh, and Fullerton, JJ., concur.