STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION, PLAINTIFF, v. CAROLINA TELEPHONE AND TELEGRAPH COMPANY, DEFENDANT.

(Filed 11 May, 1966.)

**1. Utilities Commission § 9—**

The Supreme Court may affirm the judgment of the Superior Court reversing a decision of the Utilities Commission and remanding the cause to the Commission if the judgment of the Superior Court is correct on any one of the grounds enumerated by the statute and specifically set forth in the notice of appeal from the Commission, and it is not necessary that the Supreme Court concur in the ruling by the Superior Court upon every ground set forth in the order. G.S. 62-94(b)(c).

**2. Same; Utilities Commission § 1—**

G.S. 62-79(a) and G.S. 62-60 must be construed together, and where one member of the Utilities Commission writes the decision of the Commission refusing an application for a certificate of public convenience and necessity, and two other members of the Commission concur therein on the ground that the Commission had no jurisdiction to determine the application, the decision is a decision and order of the Commission, and, the concurring opinions suggesting no other findings of fact, it is error for the Superior Court on appeal to sustain exception to the findings and conclusions on the ground that they were not those of a majority of the Commission.

**3. Utilities Commission § 1—**

The Utilities Commission has no jurisdiction to entertain an application for a certificate of public convenience and necessity by an applicant which is not a public utility as defined by G.S. 62-3(23), and its issuance of such certificate would be a nullity and could not constitute a basis for a further

order conferring upon the applicant a right which may be granted only to a public utility. G.S. 62-110.

**4. Same—**

The Utilities Commission has jurisdiction to entertain an application for a certificate of public convenience and necessity to operate a mobile radio service, notwithstanding the proposed service would be limited to a particular territory and the number of customers within such territory which its facilities would be capable of serving is limited, where the applicant would hold himself out as willing to serve all within the territory who apply up to the capacity of his facilities, and therefore offers a service to the "public" for the transmission of messages and communications as a public utility within the purview of G.S. 62-3(23).

**5. Utilities Commission § 9—**

Findings by the Commission that an applicant for a certificate of public convenience and necessity is fit and able to provide the proposed service and that the proposed service would be of convenience to the public are conclusive when supported by competent, material and substantial evidence in view of the entire record.

**6. Utilities Commission § 1—**

The requirement that the Utilities Commission apply the rules of evidence applicable in civil actions insofar as practicable, G.S. 62-60, G.S. 62-65(a), does not preclude the Commission from making findings based upon facts arising between the conclusion of the hearing and the entry of order when such facts are shown by exhibits otherwise competent, provided the adverse party has adequate notice that such exhibits have been filed, and while the adverse party is entitled to demand thereupon that the hearing be reopened in order to permit it to controvert such additional evidence, its failure to do so constitutes a waiver of this right.

**7. Utilities Commission § 7—**

A finding that a proposed service would be a convenience to the public is not sufficient for the issuance of a certificate of public convenience and necessity without a further finding that there is a public need for the proposed service in the area.

**8. Same— Application for duplicating service should be denied if utility already serving area is ready, able and willing to provide the service.**

Where a public utility has a certificate of convenience and necessity for communications in the area by telephone or telegraph or any other means of transmission, and is ready, able and willing to provide such area a mobile radio service, and it is obvious that the demand for such service in the area is not extensive, the Utilities Commission should deny an application for a certificate of public convenience and necessity to an applicant who proposes to render substantially the same mobile radio service in the area, and the fact that the applicant proposes to offer a telephone answering service as an auxiliary to its mobile radio service is not a sufficient difference to justify the issuance of the certificate when it appears that the applicant proposes to use an independent telephone answering service which would be available to any subscriber of the utility already having the franchise.

**9. Same—**

While public policy in this regard does not absolutely prohibit competition between public utilities rendering the same service, and while there is no express provision prohibiting the issuance of a certificate of public convenience and necessity to an applicant engaged in the communications field in an area already served by another utility ready, able and willing to provide such service, there is inherent in the requirement for a showing of public convenience and necessity that once a certificate is granted another certificate will not be issued to a competitor in the absence of a showing that the utility already having the franchise is not rendering, and cannot or will not render, the specific service in   question.

**10. Same—**

The burden is upon an applicant to show that there is a public convenience and need for its proposed service. G.S. 62-75.

**11. Same—**

Statutes authorizing the Utilities Commission to require a public utility to interconnect its facilities with those of a competitor must be strictly construed.

**12. Same—**

The statute authorizing the Utilities Commission to require a connection between the lines of two telephone companies when they serve localities which cannot be reached by the lines of one of them alone, cannot be construed to authorize the Utilities Commission to compel a telephone company to interconnect its system of line telephones with the system of a mobile radio service serving the identical area which the telephone company, itself, serves or desires to serve. G.S. 62-44.

MOORE, J., not sitting.

APPEALS by the North Carolina Utilities Commission and Mobile Radiotelephone Corporation from *Hubbard, J.,* 13 September 1965 Civil Session of LENOIR.

Mobile Radiotelephone Corporation, hereinafter called the Applicant, applied to the Utilities Commission, hereinafter called the Commission: (1) for the issuance to it of a certificate of public convenience and necessity permitting the operation by it of a mobile radio service and (2) for the issuance of an order requiring Carolina Telephone & Telegraph Company, hereinafter called Carolina, to interconnect its land-line telephone system with such mobile radio system of the Applicant.

The Commission entered an order granting the requested certificate of public convenience and necessity and directing Carolina to make such interconnection. From this order Carolina, having intervened as a protestant before the Commission, appealed to the superior court, setting forth 23 exceptions to the procedure, findings of fact, conclusions of law and the order of the Commission.

The superior court sustained all of the exceptions by Carolina, other than Nos. 12, 13, 23 and part of No. 9, and entered its judgment reversing the order of the Commission and remanding the matter to the Commission, with directions to deny the application. From this judgment both the Commission and the Applicant have appealed, assigning as error each of the several rulings of the court sustaining exceptions by Carolina to the order of the Commission, the ruling of the court that the order of the Commission should be reversed and the entry of its judgment so providing.

Evidence offered by the Applicant before the Commission, including exhibits, may be summarized as follows:

The Applicant is a North Carolina corporation, David E. Hardison, hereinafter called Hardison, being its only stockholder. Its articles of incorporation were filed in the office of the Secretary of State 9 April 1964. On 5 January 1965, after the conclusion of the hearing before the Commission but prior to the entry of its order, the Applicant filed in the office of the Secretary of State an amendment to its charter. This amendment states that the purposes for which the Applicant is organized include the purpose "to engage in the business of operating a common carrier communications service providing mobile radio service with interconnection with existing telephone service * * *."

The Federal Communications Commission, hereinafter called FCC, issued to Hardison its permit authorizing him, individually, to construct "a radio transmitting station." This is not a license to operate. However, the issuance of an operating license generally follows the completion of construction. After the conclusion of the hearing before the Commission, but before the entry of its order, the construction permit was assigned by Hardison to the Applicant with the consent of the FCC.

Hardison has had substantial experience as a broadcast radio engineer and in the installation and maintenance of two-way mobile communications systems. The record discloses no corporate activity of the Applicant. It appears to have no assets other than a small amount of paid in capital less accrued expenses for organization and legal services. The record contains no financial statement of the Applicant, but contains a "balance sheet" for Hardison purporting to show that Hardison, as of 30 June 1963, had a net worth of $20,-690.82, including an equity of $9,900 in a residence owned by him and his wife as tenants by the entirety. Hardison testified that the corporation has an agreement with the General Electric Company that the latter will finance the acquisition of all equipment necessary for the proposed operation provided Hardison underwrites the obligation. The estimated cost of such equipment is $3,600.

Without an interconnection with the Carolina system the Applicant's proposed service would provide, by radio, a means of communication between the Applicant's central station in Kinston and the Applicant's subscribers in their respective automobiles, so long as those vehicles remained within a radius of approximately 50 miles of Kinston. The Applicant's subscriber, in his automobile, could talk to the Applicant's operator in Kinston, who would then, by a separate, ordinary telephone call, transmit the subscriber's message to the person for whom it was ultimately intended. Conversely, one desiring to communicate with the subscriber in his automobile could telephone the message to the Applicant's central station and the Applicant's operator would then call the subscriber's automobile by radio and relay the message. Only one conversation between the Applicant's central station and an automobile could be carried on at the same time, the FCC having limited the Applicant, at least for the present, to one radio channel. The Applicant could also connect two of his subscribers in their respective automobiles so that they could converse directly with each other by radio.

If the Applicant's service is interconnected with the Carolina system, a subscriber in his automobile would be able to call the Applicant's central station by radio and have it connect him with any telephone on the Carolina system or accessible through it, including long distance calls. Similarly, any telephone subscriber could call the Applicant's central station and be connected by it to the automobile of a subscriber for a direct conversation. Even with the interconnection, the person placing the call would first have to call the Applicant's central station and be connected by it with the automobile or land telephone of the person with whom he desired to talk. Thus, even with such interconnection only one subscriber to the Applicant's service could carry on a conversation with a phone on the Carolina system at any time.

An answering service will also be available to the Applicant's subscribers. By this means a call coming to the central station for the subscriber's automobile, which cannot be put through immediately, either because the subscriber is not then in his vehicle or because the Applicant's system is busy with another conversation, can be taken by the answering service. When the subscriber is available the answering service can advise him of the call so that the necessary connection can be made. The Applicant does not propose to operate the answering service itself, but proposes to use a telephone answering service now doing business in Kinston. During the progress of a conversation with a subscriber's automobile, no other subscriber, in his automobile, could reach the answering service or be reached by it, but a land telephone could reach the answering service over an-

other trunk telephone line if the answering service has more than one trunk line telephone connection with the Carolina system. Since only one conversation could be conducted over its radio system at a time, the Applicant would impose a time limit on all conversations.

The applicant proposes to operate what it calls a "semi-private" system. Under such system a conversation between the automobile of a subscriber and another person via the Applicant's central system could be heard in part by any other subscriber. Such other subscriber could hear what one, but only one, party to the conversation was saying.

There is no such service now in operation in the Kinston area. Under the limitations of the FCC construction permit the Applicant could serve a maximum of 45 automobiles. It has determined, by a survey, that there are in the area 33 prospective customers for its proposed service with interconnection. There was no showing of any demand for such service without the proposed interconnection and the Applicant will not attempt to offer service unless it can have such interconnection with Carolina, this being essential to successful operation.

In its protest, Carolina alleges that it holds a certificate of convenience and necessity issued by the Commission for "conveying or transmitting messages or communications by telephone or telegraph, *or any other means of transmission,* where such service is offered to the public for compensation" within the Kinston area and has rendered telephone service therein for many years. [Emphasis added.] (Carolina's franchise was not offered in evidence but the truth of this allegation does not appear to be contested.) It also alleges that it is ready, willing and able to provide adequate mobile telephone service in such area. It denies the authority of the Commission to order the proposed interconnection of its system with that of the Applicant. It further denies that public convenience and necessity require the granting of the certificate sought by the Applicant. Carolina offered evidence tending to show:

Carolina is the only company authorized to render telephone service within the Kinston area. Since 1957 it has provided mobile telephone service at its Rocky Mount and Fayetteville exchanges under rate tariffs filed with the Commission. It does not presently provide this type of service in the Kinston area, but has had such service under consideration since 1963 and has completed all necessary engineering and has ordered the necessary equipment therefor. Carolina has not filed with the Commission any application for a certificate authorizing it to render mobile telephone service in the Kinston area for the reason that it takes the position that it is authorized to do so by its existing certificate, as alleged in its protest.

UTILITIES COMMISSION *v.* TELEGRAPH CO.

Carolina has obtained a construction permit from the FCC authorizing the construction by it of a transmitter at Kinston for service to a maximum of 30 mobile units and is ready, willing and able to meet the full demand for mobile telephone service in the area. It has also under consideration the offering of such service at other localities within its telephone service area. If mobile telephone service in the Kinston area is provided by Carolina, rather than by the Applicant, it would be available for use by mobile telephone subscribers based in the areas of Carolina's other telephone exchanges, and also available to such subscribers from other telephone companies. Similarly, its subscribers to such service in the Kinston area would be able to use such service at other localities served by Carolina or other telephone companies. This would not be the case if the mobile service at Kinston were provided by a "miscellaneous, common carrier," such as the Applicant.

Carolina proposes to offer a type of mobile service which would permit direct dialing between a subscriber's automobile and a land telephone. All conversations will be completely private. All mobile telephones will be listed in the telephone directory. There will be no time limit on conversations. Carolina has applied to the FCC for two radio channels at Kinston. At present only one has been allotted to it but it intends to reapply for the second channel as soon as it can demonstrate the need therefor. If and when two or more radio channels are available, the equipment which Carolina proposes to install will result in automatic connection of a call to any idle channel, whether the call is being placed or received by the automobile of the subscriber.

Carolina does not propose, in its operation, to furnish an answering service, but the independent answering service, which the Applicant proposes to use, is available to anyone who wishes to subscribe to it.

Each of the five commissioners filed a written opinion. That of Commissioner Peters sets forth the order which is the subject of this appeal. It also sets forth "findings of fact" and "conclusions" to which the assignments of error relate. Commissioners Worthington and Eller, in separate opinions, stated that they did not regard the service proposed by the Applicant as being such as would constitute the Applicant a public utility subject to regulation by the Commission. Nevertheless, each of them concurred in the issuance of the certificate to the Applicant and in the order directing Carolina to grant interconnection. Chairman Westcott and Commissioner Noah, in separate opinions, dissented on the ground that the granting of the certificate to the Applicant was not justified since Carolina presently holds a franchise in the area and is ready, able

and willing to render a service similar to that proposed by the Applicant.

The findings of fact so contained in the opinion by Commissioner Peters, which are material to this appeal, his numbering being retained, are:

"5. [T]hat the service which protestant Carolina proposes to offer in the Kinston area is an extension of its regular land-line telephone service to stations or instruments located in mobile vehicles; that, except for the fact that the stations will be located in mobile vehicles, the service will be the same as the regular telephone service offered; * * * that Carolina does not propose to offer a message service or an answer service in connection with its radio or mobile telephone service.

"6. That the mobile radio telephone service which Carolina proposes to offer is not identical with nor the same type of service as is proposed by applicant; that no other communication company holds itself out to provide the same type of service as is proposed by applicant to be rendered in this particular service area.

"7. That the service proposed by applicant will be of convenience to the public.

"8. [T]hat applicant has been advised by Carolina that it cannot be interconnected with Carolina's telephone facilities unless it is granted a Certificate of Public Convenience and Necessity from this Commission and meets certain other conditions; * * *

"9. [T]hat applicant is fit, capable and financially able to construct and operate its facilities to provide and furnish the service for which authority is sought in this application."

Under the heading "CONCLUSIONS" the opinion by Commissioner Peters states:

"In view of the evidence and the law applicable, the Commission concludes that the service proposed to be rendered, including interconnection with the land-line telephone system, is a communications service within the purview of the definition of the statute and that applicant, in rendering said service, is or will be a public utility and subject to the provisions of the utility regulatory law.

"The Commission is further of the opinion and concludes that public convenience and necessity for the proposed service has been shown; that applicant is financially and otherwise fit and able to furnish such service, and that a Certificate

of Public Convenience and Necessity should be granted to the applicant in this cause to render the service proposed in the application, and that Carolina should be required to interconnect its facilities with those of applicant."

Neither the opinion of Commissioner Worthington nor that of Commissioner Eller discloses disagreement with any finding of fact set forth in the opinion of Commissioner Peters nor with either provision of the order therein contained.

The appeals to this Court are from the judgment of the superior court reversing the order of the Commission. Reference is made in the opinion to the conclusions of the Superior court insofar as necessary to the determination of the questions presented.

*Edward B. Hipp for Appellant North Carolina Utilities Commission.*

*Arendell, Albright, Reynolds & Farmer for Appellant Mobile Radiotelephone Corporation.*

*Taylor & Brinson for Appellee Carolina Telephone and Telegraph Company.*

LAKE, J. The authority of the court to which an appeal is taken from an order of the Utilities Commission is thus stated in G.S. 62-94:

"(b)  * * *  The Court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

"(1)  In violation of constitutional provisions, or

"(2)  In excess of statutory authority or jurisdiction of the Commission, or

"(3)  Made upon unlawful proceedings, or

"(4)  Affected by other errors of law, or

"(5)  Unsupported by competent, material and substantial evidence  * * *,  or

"(6)  Arbitrary or capricious."

Upon an appeal to this Court from a judgment of the superior court, reversing a decision of the Commission and remanding the matter for further proceedings, this Court may affirm the judgment of the superior court, if the record discloses one or more of these statutory grounds for such judgment and if such ground therefor is

set forth specifically in the notice of appeal from the Commission to the superior court. G.S. 62-94(c). In order to affirm such judgment of ·the superior court, it is, therefore, not required that this Court concur in the ruling by the superior court upon every ground for relief set forth in the notice of appeal from the Commission to the superior court.

The superior court was in error in sustaining Carolina's exceptions to the order of the Commission, Nos. 1 through 5. It did so on the ground that "the Findings of Fact, Conclusions and Order entered by the North Carolina Utilities Commission on May 21, 1965, are not the Findings of Fact, Conclusions and Order of the majority of the commission."

G.S. 62-60 provides:

> "The Commission shall render its decisions upon questions of law and of facts in the same manner as a court of record. A majority of the commissioners shall constitute a quorum, and any order of decision of a majority of the commissioners shall constitute the order or decision of the Commission, except as otherwise provided in this chapter."

There are no exceptions to this statute pertinent to this appeal. A majority of the commissioners concurred in the order set forth in the opinion by Commissioner Peters. It was, therefore, the order of the Commission. Neither of the two concurring opinions nor the two dissenting opinions indicate any disagreement with any of the findings of fact stated in the opinion of Commissioner Peters. The opinion of no other commissioner suggests any other findings of fact. The findings of fact so stated in the opinion of Commissioner Peters are, therefore, concurred in by a majority, if not all of the members of the Commission, and are, therefore, the findings of the Commission.

G.S. 62-79(a) provides that all final orders of the Commission shall be sufficient in detail to enable the court on appeal to determine the controverted questions presented, and shall include "Findings and conclusions and the reasons or bases therefor upon all the material issues of fact, law, or discretion presented in the record." When these two sections of the Act are construed together, as they must be, it is apparent that the General Assembly did not intend that an order of the Commission concurred in by the majority of its members, based upon findings of fact concurred in by a majority of its members, may be reversed solely because the members of the concurring majority chose different rules, or supposed rules, of law as support for their decision and order. We do not regard the diver-

sity of the reasons given by the three commissioners who joined in the ultimate decision and order as a sufficient ground for its reversal.

We turn, therefore, to the questions presented by the appeal with reference to the merits.

The superior court sustained Carolina's Exceptions Nos. 15 and 16, among others, to the order of the Commission, saying:

> "APPELLANT'S [Carolina's] EXCEPTION No. 15 is sustained in that there is no competent, material and substantial evidence to support a Finding of Fact which could in turn support the Conclusion 'that a Certificate of Public Convenience and Necessity should be granted to the applicant in this cause to render the service proposed in the Application.'
>
> "APPELLANT'S [Carolina's] EXCEPTION No. 16 is sustained for that there was not competent, material and substantial evidence to sustain a Finding of Fact or Conclusion that the applicant was entitled to a Certificate of Convenience and Necessity, and for that, even had there been such evidence, an order requiring the appellant to interconnect its telephone facilities with those of applicant is in excess of statutory authority of the Commission."

The two concurring commissioners state in their separate opinions that the service proposed by the Applicant is not such as would constitute the Applicant a public utility but, nevertheless, the Applicant should be issued a certificate of public convenience and necessity since, without such a certificate, Carolina cannot be compelled to interconnect its system with that of the Applicant. To grant a certificate of public convenience and necessity to conduct a business which is not a public utility, within the definition of the statute, would be both arbitrary and in excess of the statutory authority of the Commission.

G.S. 62-110 provides:

> "No *public utility* shall hereafter begin the construction or operation of any *public utility* plant or system * * * without first obtaining from the Commission a certificate that public convenience and necessity requires, or will require, such construction, acquisition, or operation * * *." [Emphasis added.]

One does not need a certificate of public convenience and necessity in order to engage in a business which is not that of a public utility as defined in G.S. 62-3(23). On the other hand, the issuance of such a certificate by the Commission does not transform an ordinary business into a public utility, so as to entitle its operator to

the rights of a public utility, or so as to impose upon him the duties and limitations of a public utility. Neither the Commission nor this Court has authority to add to the types of business defined by the Legislature as public utilities. It is to be remembered that we are not here determining the limits of the broader term, "business affected with a public interest." That the General Assembly might constitutionally declare a business to be a public utility, and require it to obtain such a certificate in order to operate, does not authorize the Commission to declare it to be so when the statutory definition of "public utility" does not include such business. Thus, if the Applicant's proposed service is not within the definition of "public utility" contained in the statute, the issuance of a certificate of public convenience and necessity by the Commission to the Applicant would be a nullity. It would not supply a basis for a further order conferring upon the Applicant a right which may be granted only to a public utility.

However, the service proposed by the Applicant falls clearly within the definition of "public utility" in G.S. 62-3, which provides:

"(23)    a. 'Public utility' means a person    *   *   *
"6.    Conveying or transmitting messages or communications by telephone or telegraph, *or any other means of transmission,* where such service is offered to the public for compensation." [Emphasis added. The italicized words were inserted in the 1963 revision of Chapter 62.]

One offers service to the "public" within the meaning of this statute when he holds himself out as willing to serve all who apply up to the capacity of his facilities. It is immaterial, in this connection, that his service is limited to a specified area and his facilities are limited in capacity. For example, the operator of a single vehicle within a single community may be a common carrier. Consequently, the Applicant proposes to render a service within the definition of "public utility" in the statute. The Colorado Commission so ruled in a similar case. *Re Telephone Answering Service, Inc.,* 44 Pur. 3d 425.

This being true, the Applicant may not render its proposed service without obtaining from the Commission a certificate that public convenience and necessity require or will require such operation. G.S. 62-110. Consequently, the Commission was authorized to issue to him such certificate if, but only if, the Commission has made findings of fact, supported by competent, material and substantial evidence, which findings, in turn, support the conclusion that public

convenience and necessity "require or will require" the proposed operation by the Applicant.

The Commission has found that the Applicant is "fit, capable and financially able" to provide the proposed service and that the proposed service "will be of convenience to the public." These findings are supported by competent, material and substantial evidence in view of the entire record. They are, therefore, binding upon the reviewing court. *Utilities Commission v. Champion Papers, Inc.,* 259 N.C. 449, 130 S.E. 2d 890.

The Commission is required by G.S. 62-65(a), in cases such as the present, to apply the rules of evidence applicable in civil actions in the superior court "insofar as practicable." G.S. 62-60 provides that the Commission shall render its decision "in the same manner as a court of record."

The procedure before the Commission is, however, not as formal as that in litigation conducted in the superior court. *Utilities Commission v. Coach Co.,* 260 N.C. 43, 132 S.E. 2d 249; *Utilities Commission v. Champion Papers, Inc., supra.* In the present case, the Commission permitted the Applicant to file certain exhibits after the conclusion of the hearing. Unquestionably, Carolina thereupon had the right, unless waived, to demand that the hearing be reopened, in order to permit it to cross-examine witnesses for the Applicant with reference to data shown upon such "late" exhibits, or to offer evidence of its own in rebuttal. However, Carolina did not and does not seek a reopening of the hearing for this purpose. Its exceptions, in its notice of appeal from the Commission to the superior court, to the admission and consideration of these exhibits are upon the ground that the "late" exhibits are not only late but show events which did not occur until after the conclusion of the hearing. These exhibits are relied upon by the Applicant and the Commission to show the Applicant's ability to render the proposed service. They include an amendment to the Applicant's articles of incorporation and the assignment to it by Hardison of the construction permit issued to him by the FCC. There is no indication that Carolina contests the correctness of the data or the occurrence of the events shown thereon. The statutes prescribing the procedure for hearings before the Commission do not forbid it to make a finding, as to the Applicant's capacity and ability to serve, upon the basis of facts arising between the conclusion of the hearing and the entry of the order when those facts are shown by "late" exhibits, otherwise competent, and when the adverse party has had adequate notice that such exhibits have been filed with the Commission for inclusion in the record.

Carolina's Exceptions Nos. 6 and 7 to the order of the Commission, contained in its notice of appeal from the Commission to the superior court, which were sustained by the superior court, do not, therefore, justify the reversal of the Commission's order.

However, the finding by the Commission that the rendering of the proposed service by the Applicant would be a convenience to the public, even if supported by competent and substantial evidence, is not adequate basis for an order granting the Applicant a certificate of public convenience and necessity. To entitle the Applicant to such a certificate it is, of course, not necessary for him to show, and the Commission to find, that the proposed service is necessary in the sense of being indispensable. *Utilities Commission v. Coach Co., supra; Utilities Commission v. R. R.,* 254 N.C. 73, 118 S.E. 2d 21. Nevertheless, a mere showing of convenience is not sufficient. There must be an element of public need for the proposed service by the Applicant in the area.

Carolina, in its duly verified protest, alleges that it is the holder of a certificate of convenience and necessity for the geographic area in question, authorizing it to engage in the business of "conveying or transmitting messages or communications by telephone or telegraph, *or any other means of transmission,* where such is offered to the public for compensation." [Emphasis added.] A certificate so worded would appear sufficient to permit Carolina to render the proposed service in the Kinston area. There is no suggestion in any finding of the Commission that Carolina is not ready, able and willing to provide a mobile telephone service in the Kinston area, and there is no evidence in the record which would support such a finding. On the contrary, the record shows that Carolina is ready, able and willing to do so. There is no suggestion that the right to supply this service in the area be taken from Carolina by an amendment to its certificate. We are, therefore, not required to determine whether such an order would be within the statutory authority of the Commission. There is no suggestion in the record that the public needs or would benefit from having two companies rendering this service in this area. It is obvious from the record that at present the total demand for such service in the Kinston area is not extensive. It may well be doubted that it is sufficient to permit both Carolina and the Applicant to operate such services successfully.

The Commission found that Carolina proposes a service in the area which is "not identical with nor the same type of service as is proposed by applicant." This finding is, in turn, based upon the finding "that Carolina does not propose to offer a message service or an answer service in connection with its radio or mobile telephone

service." The record, however, shows that the answering service which will be available to the Applicant's subscribers, if the Applicant is permitted to operate, is not to be owned and operated by the Applicant but is an independent telephone answering service in the city of Kinston and that it is available to any subscriber to Carolina's service at Kinston. Consequently, the record does not contain evidence to support a finding that there is a substantial difference in nature between the service proposed by the Applicant and that proposed by Carolina. The two services need not be identical in every respect in order to give the utility already serving the area the prior right.

G.S. 62-262(f) expressly provides as to motor carriers of passengers that no certificate shall be granted to an applicant proposing to serve a route already served by a previously authorized motor carrier unless and until the Commission shall find from the evidence that the service rendered by such previously authorized carrier is inadequate, and the certificate holder has been given reasonable time to remedy the inadequacy. See *Utilities Commission v. Coach Co., supra; Utilities Commission v. Coach Co.*, 233 N.C. 119, 63 S.E. 2d ·113.

There is no such express provision as to utilities engaged in the communications field. Nevertheless, the basis for the requirement of a certificate of public convenience and necessity, as a prerequisite to the right to serve, is the adoption, by the General Assembly, of the policy that, nothing else appearing, the public is better served by a regulated monopoly than by competing suppliers of the service. The requirement of such a certificate is not an absolute prohibition of competition between public utilities rendering the same service. *Utilities Commission v. Coach Co.*, 224 N.C. 390, 30 S.E. 2d 328; *Citizens Valley View Co. v. Illinois Commerce Commission*, 28 Ill. 2d 294, 192 N.E. 2d 392; *Mo., Kan. & Okla. Coach Lines, Inc. v. State*, 183 Okla. 3, 81 P. 2d 664. There is, however, inherent in this requirement the concept that, once a certificate is granted which authorizes the holder to render the proposed service within the geographic area in question, a certificate will not be granted to a competitor in the absence of a showing that the utility already in the field is not rendering and cannot or will not render the specific service in question.

In *Monson Dray Line, Inc. v. Murphy Motor Freight Lines, Inc.*, 259 Minn. 382, 107 N.W. 2d 850, the court said, "The term 'necessity' as used in the statute contemplates 'a definite public need for a transportation service for which no reasonably adequate public service exists.'" A like statement is found in *Canton, etc. Coach*

*Co. v. Public Utilities Commission,* 123 Oh. St. 127, 174 N.E. 244. In *McFayden v. Public Utilities Consolidated Corp.,* 50 Idaho 651, 299 P. 671, the court said:

> "If the new service offered has no advantage over the old from the public viewpoint, other than mere competition under similar basic costs, then the convenience and necessity for it, under the public utility law, would be wanting, and the utility in the field would be entitled to protection against duplication and unwarranted competition."

In *Kosciusko County re Membership Corp. v. Public Service Commission,* 225 Ind. 666, 77 N.E. 2d 572, the court said:

> "There was no allegation in the petition nor was there any evidence or finding which would remotely indicate that the appellant REMC is not ready, willing and able to adequately serve all customers in this territory at a reasonable rate when the extension of its service is requested; in fact all the evidence was the other way. This was a necessary item of proof in order to warrant the granting by the Commission of this petition."

One of the leading cases upon the question is *Chicago and West Towns Rys. v. Illinois Commerce Commission,* 383 Ill. 20, 48 N.E. 2d 320. There, after reviewing its earlier decisions, the Supreme Court of Illinois said:

> "In our opinion the foregoing cases conclusively establish the right of appellants to have an opportunity as a regulated monopoly to render whatever service convenience and necessity may require, and it is only when it has been demonstrated that it is unable either from financial or other reasons to properly serve the public that a competing carrier will be allowed to invade the field."

Other decisions of the Illinois Court to the same effect are: *Citizens Valley View Co. v. Illinois Commerce Commission, supra; Chicago Rys. Co. v. Illinois Commerce Commission,* 336 Ill. 51, 167 N.E. 840. *Bartonville Bus Line v. Eagle Motor Coach Line,* 326 Ill. 200, 157 N.E. 175; *Illinois Power & Light Corp. v. Illinois Commerce Commission,* 320 Ill. 427, 151 N.E. 236. Decisions of other jurisdictions taking the same view of the matter include: *Re Trico Electric Cooperative, Inc.,* 92 Ariz. 373, 377 P. 2d 309; *Consolidated Coach Corp. v. Ky. River Coach Co.,* 249 Ky. 65, 60 S.W. 2d 127; *State v. Public Service Commission,* 327 Mo. 249, 37 S.W. 2d 576; *Capital Electric Power Asso. v. Mississippi Power & Light Co.,* 240 Miss.

139, 125 So. 2d 739; *N. Y. Central R. Co. v. Public Utilities Commission,* 123 Oh. St. 370, 175 N.E. 596; *Yelton & McLaughlin v. Dept. of Public Works,* 136 Wash. 445, 240 P. 679.

The burden of proof is upon the Applicant to show there is a public convenience and necessity for its proposed service. G.S. 62-75; *Utilities Commission v. Coach Co.,* 261 N.C. 384, 134 S.E. 2d 689. That showing has not been made by the Applicant in the record before us. The superior court, therefore, properly sustained Carolina's Exception No. 15 set forth in the notice of appeal from the Commission to the superior court.

Even if the present record were sufficient to support the order granting the Applicant a certificate of public convenience and necessity "to act as a common carrier of communications providing mobile radio service," the Commission had no statutory authority to require Carolina to interconnect the Applicant's radio communications system with Carolina's land telephone system. G.S. 62-44 provides:

> "The Commission may, * * * require any two or more *telephone or telegraph utilities* to establish and maintain through lines within the State between two or more localities, *which cannot be communicated with or reached by the lines of either utility alone,* where the lines or wires of such utilities form a continuous line of communication, or could be made to do so by the construction and maintenance of suitable connections or the joint use of equipment, or the transfer of messages at common points." [Emphasis added.]

If permitted to render the service which it proposes to render within its own system, the Applicant would not be a "telephone or telegraph utility," though it would be a public utility conveying or transmitting messages by "other means of transmission," namely, radio.

In a somewhat similar case, *Evansville & H. Traction Co. v. Henderson Bridge Co.,* 134 F. 973 (W. D., Ky.), Evans, D.J., said:

> "It may be remarked in this connection that what is demanded by complainant by its bill is closely akin to the exercise of the right of eminent domain, namely, the right to have the property of another subjected to complainant's use; * * *
> "One water company or one telephone company or one telegraph company or one street railway company or one railroad company, while bound appropriately to serve the general public, cannot, *unless under express statutory enactment* and by due process of law thereunder, be compelled to give its prop-

erty to the uses and benefits of a rival, except by some form of condemnation." [Emphasis added.]

With reference to a Missouri statute requiring telephone companies to accept and transmit messages for other telephone companies, the court said in *Home Tel. Co. v. Sarcoxie Light & Tel. Co.,* 236 Mo. 114, 139 S.W. 108:

"This section does not require physical connection between telephone lines. It does require such company to receive all messages from other telephone or telegraph lines and transmit them, as it likewise requires it to receive all messages from individuals. This does not mean that such corporation must yield to a physical connection with its lines by a competitive company, and permit the use thereof in that way. In such case and under this statute, the telephone corporation or the telegraph corporation has no greater right than the individual. If the individual goes to the office of the telephone company and tenders payment for a message, the company must accomodate him. So, too, if a telegraph company or other telephone company goes, in the capacity of an individual or corporate entity, and demands a similar service, it must be rendered. But this does not mean that the telephone company must put up a switchboard for all such individuals or corporations desiring to do business with the telephone company."

In *Clay County Co-op Tel. Asso. v. Southwestern Bell Tel. Co.,* 107 Kan. 169, 190 P. 747, 11 A.L.R. 1193, the court said:

"Any one who desires a telephone of this company is entitled to have one; and each company is entitled to a telephone of the other, should it so desire. That service satisfies the public duty of each company. Patrons of the United Company have no right, as individuals or in the name of the public interest, to demand that the United Company furnish them with means of communication with patrons of the Co-operative group who do not patronize the United Company. Patrons of the Co-operative Company are in the same situation. *Without a statute, facilities for communications between the two groups of patrons cannot be compelled.*" [Emphasis added.]

In *Western Buse Tel. Co. v. Northwestern Bell Tel. Co.,* 188 Minn. 524, 248 N.W. 220, the court said:

"At common law public utilities were and are required to furnish equal facilities to the public. But physical connection between telephone companies cannot be compelled at common

law. *State ex rel. Fletcher v. N.W. Bell Telephone Co.,* 214 Iowa 1100, 240 N.W. 252. *The right to do so rests entirely in statutory law.*" [Emphasis added.]

To the same effect, see *Home Tel. Co. v. People's T. & T. Co.,* 125 Tenn. 270, 141 S.W. 845, the decision of the United States Court of Appeals for the Eighth Circuit in *Oklahoma etc. Tel. Co. v. Southwestern Bell Tel. Co.,* 45 F. 2d 995, 76 A.L.R. 944, applying the law of Arkansas, and Annot., 76 A.L.R. 953.

The Supreme Court of Missouri, construing a statute permitting the Public Service Commission of that state to require a physical connection between telephone companies "maintaining telephone communication for hire," held the Commission was without authority to require a telephone company to connect its lines with those of a mutual telephone company. *State v. Public Service Commission,* 272 Mo. 627, 199 S.W. 962.

The Supreme Court of Indiana said in *General Tel. Co. v. Public Service Commission,* 238 Ind. 646, 150 N.E. 2d 891:

> "When the power of the Public Service Commission comes in question it must be recognized it is a statutory board which 'derives its power and authority solely from the statute, and unless a grant of power and authority can be found in the statute it must be concluded that there is none.'"

The power to require the proprietor of a business to interconnect its facilities with those of a competitor is a drastic power. Statutes conferring it should not be extended beyond their plain meaning. G.S. 62-44 authorizes the Commission to require a connection of the lines of two telephone companies, but only when they serve localities which cannot be communicated with by the lines of one of them alone. This statute may not reasonably be extended by construction to authorize the Commission to compel a telephone company to interconnect its system with the system of a radio company serving the identical area which the telephone company, itself, serves or desires to serve.

The Applicant testified that his proposed radio communication system, between his base radio station and the automobiles of his subscribers, cannot operate successfully of itself and he does not propose to embark upon a service so limited. The order of the Commission requires Carolina to interconnect its system with a competitor in order to enable that competitor to take from Carolina patronage it desires and is permitted to serve under its own certificate. There is no provision in Chapter 62 of the General Statutes which requires, or authorizes the Commission to require, a utility,

with large investments in its own plant and facilities, to permit interconnection with such plant and facilities by a competitor in order to increase the competitor's opportunity to take away its customers or prospective customers. The order requiring interconnection was beyond the statutory authority of the Commission, and the superior court properly sustained Carolina's Exception No. 16 to the order of the Commission.

For these reasons, the judgment of the superior court reversing the order of the Commission and remanding the cause to the Commission with directions to enter an order denying the application of the Applicant must be affirmed. It is not necessary for us to discuss specifically other assignments of error by the Commission and the Applicant in their appeals to this Court. We have carefully considered each of them and find nothing therein which would justify reversal or modification of the judgment of the superior court.

Affirmed.

MOORE, J., not sitting.