STATE OF NORTH CAROLINA EX REL UTILITIES COMMISSION AND E. A. FRIDDLE, ET AL v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY AND CENTRAL TELEPHONE COMPANY

No. 7410UC115

(Filed 3 April 1974)

Telephone and Telegraph Companies § 1; Utilities Commission § 7— compelling telephone service — area served by another company
　　　G.S. 62-42, when construed *in pari materia* with G.S. 62-110, does not authorize the Utilities Commission to compel a telephone company

to provide local exchange service to an area which is already receiving such service from another telephone company.

APPEAL by Southern Bell Telephone and Telegraph Company and Central Telephone Company from the Order of the North Carolina Utilities Commission in Docket No. P-29, Sub 85, dated 19 June 1973.

This proceeding originated on 9 May 1972 when E. A. Friddle, his wife, and several other residents living in a small area of Rockingham County near the Guilford County line filed a petition with the Utilities Commission seeking to have their neighborhood removed from the Madison franchise exchange area of Lee (now Central) Telephone Company and added to the adjoining Summerfield franchise exchange area of Southern Bell Telephone and Telegraph Company (Southern Bell). Hearings on the complaint were held on 24-25 October 1972 in Raleigh before Division III of the Commission (Commissioners Wells, McDevitt, and Rhyne). Thirteen of the complainants testified at this hearing and their testimony tended to establish among other things (1) that these complainants were not receiving any telephone service whatsoever; (2) that the service presently offered by Central from its Madison exchange was of no value to them as their common interests reside with Stokesdale, Summerfield, and Greensboro, which communities are in the Southern Bell franchise area; (3) that the cost of telephone communication which could be provided to the complainants by Central Telephone Company would be prohibitive as most of the calls made by the complainants would be to Stokesdale, Summerfield, and Greensboro, and such calls are of the long distance variety. Testimony proffered by Southern Bell and Central Telephone Company tended to show that Central Telephone Company has facilities presently available to serve the complainants and is ready, willing, and able to serve them. Conversely, Southern Bell has never offered nor undertaken to serve the area in question.

At the conclusion of all the evidence Southern Bell renewed its motion to dismiss the complaint as to it (Southern Bell having made the same motion at the conclusion of complainants' evidence) on the grounds that Southern Bell, having neither undertaken nor proffered service in the geographic area in which complainants reside and in which they desire the right to demand Southern Bell service, the Commission is without

constitutional jurisdiction to require Southern Bell to render such service. This motion was denied. Also, at the conclusion of all the evidence, Central Telephone Company moved to dismiss the complaint as to it on the grounds that the geographic area involved is assigned to it by the Commission, that it has made substantial investment in such area, and that there is no showing of any constitutional reason for changing the boundary line. This motion was likewise denied.

On 19 March 1973, Division III of the Commission issued its Recommended Order changing the boundary line. The Commissioners made the following findings of fact:

"1. Southern Bell Telephone and Telegraph Company and Lee Telephone Company are certificated public utilities operating a telephone utility enterprise in the State of North Carolina, and both telephone companies are franchised in the area in the southern portion of Madison (sic) [Rockingham] County bounded on the north and west by North Carolina Highway 65, on the east by State Road 2340, and on the south by the Madison (sic) [Rockingham] Guilford County line.

2. Petitioners herein reside in the general area described above.

3. The service area boundary lines between Bell's Summerfield Exchange and Lee's Madison Exchange are ill-defined and not precisely fixed, do not reflect any design criteria, and were fixed by the unilateral, arbitrary action of the two companies many years ago.

4. The needs and preferences of Petitioners and other (sic) similarly situated in the area in question were not taken into consideration in the fixing of said boundary lines, and in that respect, there was no opportunity for said needs and preferences to be expressed to this Commission at the time said boundary lines were fixed.

5. The boundary lines as they now exist do not meet the test of public convenience and necessity as it applies to the Petitioners herein and other (sic) similarly situated in the area in question and the telephone communication needs of said Petitioners and others similarly situated in said area are therefore not being met.

6. Pursuant to its Certificate of Public Convenience and Necessity and its franchise privileges it exercises and enjoys in this State, Bell is obligated under the circumstances of this case, to extend service to Petitioners, and its service exchange boundary line and that Lee should be modified in a manner consistent with Bell providing said service, which modification will be dealt with in the Conclusions stated later in this opinion.

7. Lee has certain facilities in the immediate vicinity of the area in question which have apparently been extended to furnish service to one or more subscribers, which facilities may and should remain in the area so long as the present subscribers desire to use them."

Based upon these findings the Commission concluded "that the needs of these Petitioners for telephone service has not been met and cannot be met by Lee Telephone Company [now Central Telephone Company]; can be and should be met by Southern Bell Telephone and Telegraph Company; that Bell should proceed to modify its Summerfield Exchange boundary limits to anticipate serving the needs of Petitioners, and should begin plans immediately to extend service into the area in question.

\*    \*    \*    \*

IT IS, THEREFORE, ORDERED:

\*    \*    \*    \*

(3) Bell shall immediately begin plans to serve all unserved customers in said area and shall extend service to them as soon as is practicable.

(4) Lee shall be allowed to continue to serve its present customers in said area so long as it desires to do so, but may surrender any or all of said customers if requested, and if Lee so desires to surrender them. In the event Lee surrenders any of said customers, Bell shall serve said customers upon request. The word 'customers' as used herein shall be construed to include the physical premises wherein the telephone service is located."

*Edward B. Hipp and Robert F. Page for plaintiff appellees, North Carolina Utilities Commission.*

*Bailey, Dixon, Wooten, McDonald & Fountain by J. Ruffin Bailey for plaintiff appellees, E. A. Friddle, et al.*

*Joyner & Howison by R. C. Howison, Jr., for defendant appellant Southern Bell Telephone and Telegraph Company.*

*Boyce, Mitchell, Burns & Smith by F. Kent Burns and Ross Hardies, O'Keefe, Babcock & Parsons by Donald W. Glaves for defendant appellant Central Telephone Company.*

HEDRICK, Judge.

The single issue presented by this appeal is whether the Utilities Commission was correct in ordering Southern Bell to provide telephone service to individuals who reside in an area which is presently served by Central Telephone Company. The order in the instant case requiring Southern Bell to render telephone service to the complainants was founded upon G.S. 62-42 which reads as follows:

"G.S. 62-42. *Compelling efficient service, extensions of services and facilities, additions and improvements.*— (a) Whenever the Commission, after notice and hearing had upon its own motion or upon complaint, finds:

(1) That the service of any public utility is inadequate, insufficient or unreasonably discriminatory, or

(2) That persons are not served who may reasonably be served, or

(3) That additions, extensions, repairs or improvements to, or changes in, the existing plant, equipment, apparatus, facilities or other physical property of any public utility, of any two or more public utilities ought reasonably to be made, or

(4) That it is reasonable and proper that new structures should be erected to promote the security or convenience or safety of its patrons, employees and the public, or

(5) That any other act is necessary to secure reasonably adequate service or facilities and reasonably and

adequately to serve the public convenience and necessity,

the Commission shall enter and serve an order directing that such additions, extensions, repairs, improvements, or additional services or changes shall be made or affected within a reasonable time prescribed in the order. * * *"

Although we do not dispute the fact that G.S. 62-42 is germane to the issue of whether Southern Bell should be ordered to provide complainants with telephone service, we agree with the view propounded by Wooten, Chairman of the Utilities Commission, when he stated in his dissent to the Commission's Final Order that "G.S. 62-42 . . . must be construed in connection with G.S. 62-110 which requires the issuance of a certificate of public convenience and necessity to construct new facilities except where such construction is 'into territory contiguous to that already occupied AND NOT RECEIVING SIMILAR SERVICE FROM ANOTHER PUBLIC UTILITY.'" The uncontroverted evidence clearly demonstrates that Central Telephone Company has incurred a substantial capital investment in order that it might stand ready, willing, and able to provide the complainants with telephone service, and under the facts of this case, to order Southern Bell to render service to an area already occupied by Central Telephone Company would foster duplication, wastefulness, and unwarranted competition—all of which are repugnant to the avowed policy of the public utility law. *Utilities Commission v. Telegraph Co.*, 267 N.C. 257, 148 S.E. 2d 100 (1966). Clearly a reading of G.S. 62-42 *in pari materia* with G.S. 62-110 results in the determination that the Commission does not have the authority to compel Southern Bell to provide local exchange service to an area which is already receiving such service from another public utility.

For the reasons herein stated the order of the Commission requiring Southern Bell to provide telephone service to the complainants is

Reversed.

Judges CAMPBELL and BALEY concur.