STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, TWO WAY RADIO OF CAROLINA, INC. (PROTESTANT), AND TARHEEL ASSOCIATION OF RADIO-TELEPHONE SYSTEMS, INC. (INTERVENORS) v. WILLIAM D. SIMPSON, "RADIO COMMON CARRIER SERVICE"

No. 7610UC750

(Filed 16 March 1977)

Utilities Commission § 7— radio communications service for doctors — public utility

> A medical doctor who provided radio communications services to ten doctors in his county for compensation was engaged in the operation of a "public" utility within the meaning of G.S. 62-3(23)a.6 where he served almost one-half of the radio communications market in the county.

APPEAL by defendant from order of North Carolina Utilities Commission entered 26 April 1976. Heard in the Court of Appeals 16 February 1977.

William D. Simpson, applicant, is a physician and a member of the Cleveland County Medical Society. He owns and operates Professional Answering Service, a telephone answering service, and also a radio paging service which notifies some of his answering service subscribers whenever a telephone message has been received. For this purpose, Dr. Simpson owns a radio transmitter, licensed by the Federal Communications Commission, and ten receiving units. Seven of these are "walkie-talkies" and three are "beepers." Dr. Simpson uses one unit; he rents the others to individual members of the Cleveland County Medical Society, in consideration for which he receives each month an amount equal to the amortized cost of his equipment. Dr. Simpson holds a limited license from the FCC which prevents him from operating more than ten receivers. Accord-

ingly, he could not expand his service without first obtaining a new license.

Two-Way Radio of Carolina, Inc. (Two-Way Radio), the protestant in this action, pursuant to G.S. 62-110, *et seq.*, holds the radio common carrier certificate of convenience and necessity for Cleveland County. Two-Way Radio serves twelve customers in the county.

On 20 February 1975, Dr. Simpson filed an application with the North Carolina Utilities Commission requesting a hearing to determine whether or not he was engaged in the operation of a public utility within the meaning of North Carolina General Statutes 62-3(23)a.6 and 62-119. At the hearing, the examiner construed the application as a request for exemption from regulation, and he recommended a denial. The Commission also denied Simpson's request.

Dr. Simpson's evidence at the hearing tends to show that his service is a hobby stemming from his love of radios and gadgets. He limits his service to ten doctors who are all members of his county medical society. A temporary loan of equipment to someone who was not a doctor seems not to have been for any consideration and was terminated before this hearing began.

Evidence by Two-Way Radio and intervenors tends to show that radio paging services are used primarily by persons in certain professions. Doctors are probably the most common subcribers. Realtors and builders constitute much of the market. A few subscribers seemingly fall outside of any class. There was testimony that a loss of medical personnel from this market could drive up rates for these persons and perhaps ruin their businesses.

The Utilities Commission found that Dr. Simpson operated his paging service, without a certificate of convenience and necessity, as an adjunct to Professional Answering Service. Though he knew that Two-Way Radio held the certificate of convenience and necessity, and though Two-Way Radio was willing and able to serve all who applied to it, Dr. Simpson offered his service to the public for compensation. This service was identical to and in competition with that offered by Two-Way Radio. In line with these findings, the Commission concluded as a matter of law that Dr. Simpson's service was offered

to the public within the meaning of G.S. 62-3(23)a.6 and G.S. 62-119. Dr. Simpson's request for an exemption was denied, and he was ordered to cease and desist from offering his paging service. He appealed.

*Utilities Commission Attorney Edward B. Hipp and Assistant Commission Attorney Theodore C. Brown, Jr., for plaintiff appellee.*

*Reynolds & Howard, by E. Cader Howard, for protestant appellees.*

*Hamrick, Mauney & Flowers, by Joe Mauney and Fred A. Flowers, for defendant appellant.*

ARNOLD, Judge.

By this appeal the following question is presented for review: Is the applicant, a medical doctor, whose communication service consisting of seven two-way radios, three "beeper" radio devices, and one base station, and providing service only to ten other members of the County Medical Society, engaged in the operation of a public utility.

The North Carolina General Assembly has enacted statutes to define and regulate public utilities. Among them are G.S. 62-3(23) and G.S. 62-119, pertinent to this appeal. G.S. 62-119 provides that a "radio common carrier" is every person "owning, operating or managing a business of providing or offering a service for hire to the public of one-way or two-way radio or radio telephone communications. . . . " A broader definition of a public utility, contained in G.S. 62-3(23)a.6, includes a person "[c]onveying or transmitting messages or communications by . . . any . . . means of transmission, where such service is offered to the public for compensation."

Dr. Simpson contends that his service is not a public utility within the statutory definitions, and that he is therefore not subject to regulation by the Utilities Commission. In order to decide whether this service is a public utility the meaning of the word "public" as used in G.S. 62-3(23) and G.S. 62-119 must be interpreted. "Public," is not defined in the statutes although the word "public" is used throughout Chapter 62 relating to Public Utilities.

Words must be given their ordinary meanings, argues Dr. Simpson, and he defines "public" as "all" the members of the community, or at least "all who apply" for the service. He is not willing to offer his service to all who apply, but instead his service is limited to a highly restricted class of people. Dr. Simpson insists, therefore, that his service is not provided or offered "to the public."

In support of his position, Dr. Simpson cites the following language from *Utilities Commission v. Carolina Telephone & Telegraph Co.*, 267 N.C. 257, 148 S.E. 2d 100 (1966):

> "One offers service to the 'public' within the meaning of [G.S. 62-3 (23) a.6] when he holds himself out as willing to serve all who apply up to the capacity of his facilities. It is immaterial, in this connection, that his service is limited to a specified area and his facilities are limited in capacity. For example, the operator of a single vehicle within a single community may be a common carrier." *Id.* at 268.

Unfortunately, the Supreme Court in that case did not address the question raised here due to Dr. Simpson's limited offer of service. In *Carolina Telephone & Telegraph Co.* the common carrier was offering services to all who cared to apply.

Nothing else appearing, it is true that words used in statutes are to be given ordinary and natural meanings. It is equally true, however, that words and phrases in statutes are to be construed as part of the whole and given that meaning which accomplishes the legislature's purpose and comports with its public policy. *Vogel v. Supply Co.*, 277 N.C. 119, 177 S.E. 2d 273 (1970). Our General Assembly has decided that companies or persons providing two-way radio communications for the public perform a service which is within the public interest. G.S. 62-119, *et seq.* It concluded that in this field of service the public is better served by a regulated monopoly than by competing carriers. *Utilities Commission v. Carolina Telephone & Telegraph Co.*, *supra*, at 271.

In *Carolina Telephone & Telegraph Co.* it was held that an offering to a limited geographical area is a public offering and thus within the definition of a public utility. Cases in other jurisdictions have held that an offering to a particular group or class is still "public" if a significant part of the public ob-

tains the service offered or provided. The United States Supreme Court, in *Terminal Taxicab Co., Inc. v. District of Columbia,* 241 U.S. 252, 60 L.Ed. 984, 36 S.Ct. 583 (1916), held that a taxicab company was a common carrier offering its services for the public's use even though most of its service was, by contract, limited to the patrons of several hotels and a railway station. "The [taxicab] service affects so considerable a fraction of the public that it is public. . . . " *Id.* at 255.

The New York courts reached the same result. In *Surface Transportation Corp. v. Reservoir Bus Lines,* 271 App. Div. 556, 67 N.Y.S. 2d 135 (1946), it was held that a bus company was "operated for the use and convenience of the public" (within the meaning of the pertinent statute) even though its services were restricted to the residents of particular apartment houses. "Within the limits of its functions defendant is available to everyone who desires to use its facilities. . . . Its service affect so considerable a fraction of the public in the afore-mentioned area that it is public. . . . " *Id.* at 560.

Evidence offered by Two-Way Radio of Carolina, protestant herein, indicated that medical personnel account for a high percentage of those who currently use this service. Three different proprietors of radio communications systems testified that 24%, 29.5% and 92% of their respective customers are in the medical profession. Testimony from these witnesses indicated that the loss of their present medical customers would be very detrimental.

Even though Dr. Simpson's service is offered only to doctors in his county, and his service extends to the limit of his facilities, still he serves almost one-half the market in that county. If professionals and businessmen who now comprise most of the consuming public, such as doctors, realtors and builders as shown by evidence in the record, are free to establish their own radio communications services it could have a detrimental effect on radio common carriers, like the protestant and the intervenors, which are regulated. Such radio common carriers could be forced out of business. The few remaining customers who do not fall within the restricted class of, for example, doctors, realtors or builders, would then be without service. This would be contrary to the purpose and policy of the legislature which has decided two-way radio service is of sufficient public interest to warrant regulation.

The fact that Dr. Simpson's service is limited to only ten doctors in Cleveland County does not control. Two-Way Radio serves only twelve customers in Cleveland County, none of whom are doctors. Such a significant portion of the consuming market is served by Dr. Simpson's service that it is "public" within the meaning of G.S. 62-3(23)a.6. It is a public utility and thus subject to regulation by the Utilities Commission.

For the reasons stated, the order appealed from is

Affirmed.

Chief Judge BROCK and Judge PARKER concur.